# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP275 |
| COMPLETE TITLE: | The Honorable William M. Gabler, Sr., Petitioner-Respondent, v. Crime Victims Rights Board, Respondent-Appellant, Wisconsin Department of Justice, Respondent. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | June 27, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 17, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Eau Claire |
| JUDGE: | James J. Duvall |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| CONCURRED/DISSENTED: | ABRAHAMSON, J. concurs and dissents (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | A.W. BRADLEY, J. did not participate. |

ATTORNEYS:

For the respondent-appellant there were briefs (in court of appeals) by *Thomas C. Bellavia,* assistant attorney general, and *Brad D. Schimel*, attorney general, and oral argument by *Misha Tseytlin.*

For the petitioner-respondent, there was a brief (in court of appeals) by *Thimothy M. Barber* and *Axley Brynelson, LLP*, Madison, with whom on the brief was *Patrick J. Fielder* and *Hurley, Burish & Stanton, SC*, Madison. Oral argument by *Patrick J. Fiedler.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP275
(L.C. No. 2013CV473)

STATE OF WISCONSIN : IN SUPREME COURT

**The Honorable William M. Gabler, Sr.,**

    **Petitioner-Respondent,**

  **v.**

**Crime Victims Rights Board,**

    **Respondent-Appellant,**

**Wisconsin Department of Justice,**

    **Respondent.**

**FILED**

**JUN 27, 2017**

Diane M. Fremgen
Clerk of Supreme Court

APPEAL from an order of the Circuit Court for Eau Claire County, James J. Duvall, Judge. *Affirmed.*

¶1 REBECCA GRASSL BRADLEY, J.  In creating an executive branch entity with authority to pass judgment and impose discipline on a judge's exercise of core judicial powers, the Wisconsin legislature violates the Wisconsin Constitution's structural separation of powers and invades a domain recognized for over two hundred years as the exclusive province of the judiciary.  Neither the executive branch nor the legislature may reprimand or otherwise discipline a Wisconsin judge.  The

Wisconsin Constitution reserves such disciplinary powers for the supreme court alone. Nor may the legislature empower the executive branch to threaten any judicial officer with repercussions for exercising constitutional power vested exclusively in the judiciary.

¶2 Encroachment on judicial power degrades the judicial independence that serves as a bulwark protecting the people against tyranny. By statutorily authorizing executive action against the judiciary, the legislature unconstitutionally conferred power on an executive board to impair, improperly influence, and regulate the judiciary's exercise of its constitutional duties. Specifically, the legislature transgressed the constitutional boundaries of its powers by authorizing the Crime Victims Rights Board (the "Board") to investigate and adjudicate complaints against judges, issue reprimands against judges, and seek equitable relief and forfeitures through civil actions against judges. We therefore affirm the decision of the circuit court and hold that Wis. Stat. §§ 950.09(2)(a), (2)(c)-(d) and (3) and 950.11 (2015-16)[1] are unconstitutional with respect to judges; accordingly, the Board's actions against Judge William M. Gabler are void.

## I. AN INDEPENDENT JUDICIARY

¶3 Any student of American government can recite the fundamental principle that both our state and the federal

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

Republic separate governmental powers between independent legislative, executive, and judicial branches. In a 1796 speech to his colleagues in the Fourth Congress, then-Representative James Madison deftly summarized the dispersal of power he helped to engineer:

> The powers given up by the people for the purposes of Government, had been divided into two great classes. One of these formed the State Governments; the other, the Federal Government. The powers of the Government had been further divided into three great departments; and the Legislative department again subdivided into two independent branches. Around each of these portions of power were seen also exceptions and qualifications, as additional guards against the abuses to which power is liable.

5 Annals of Cong. 493 (1796). Joseph Story later "deemed [it] a maxim of vital importance" that "the three great powers of government . . . should for ever be kept separate and distinct." 2 Joseph Story, Commentaries on the Constitution of the United States § 519, at 2-3 (Boston, Hilliard, Gray, & Co., 1833). After more than two hundred years of constitutional governance, that tripartite separation of independent governmental power remains the bedrock of the structure by which we secure liberty in both Wisconsin and the United States.

¶4 To the Framers of the United States Constitution, the concentration of governmental power presented an extraordinary threat to individual liberty: "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, . . . may justly be pronounced the very definition of tyranny." The Federalist No. 47, at 298

(James Madison) (Clinton Rossiter ed., 1961) [hereinafter Federalist]. As Madison explained when advocating for the Constitution's adoption, neither the legislature nor the executive nor the judiciary "ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers." Federalist No. 48 (James Madison), id. at 305.

¶5 The Framers' fear of concentrated power reflected the thinking of seventeenth and eighteenth century political philosophers, who warned of the ramifications of unchecked governmental power. John Locke, for example, observed that "it may be too great a temptation to human frailty, apt to grasp at power, for the same persons who have the power of making laws to have also in their hands the power to execute them." John Locke, The Second Treatise of Civil Government § 143 (1764), reprinted in Two Treatises of Government 119, 194 (Thomas I. Cook ed., 1947). Absent separation, those who make the laws "may exempt themselves from obedience," or they might "suit the law, both in its making and execution, to their own private advantage." Id. Montesquieu[2] shared Locke's concern about the threat to liberty from accumulated power, expressing apprehension that a government with shared legislative and executive power could first "enact tyrannical laws" then "execute them in a tyrannical manner." 1 Montesquieu, The

---

[2] The philosopher Charles Louis de Secondat, Baron de Montesquieu, is generally known simply by his title.

4

Spirit of the Laws 151-52 (Oskar Piest et al. eds., Thomas Nugent trans., 1949) (1748). Similar concern marked Montesquieu's assessment of the judicial power, which could impinge on liberty through "arbitrary control," if fused with the legislature, or by "violence and oppression," if mixed with the executive. Id. at 152.[3]

¶6 "[T]he Constitution of the United States divides all power conferred upon the Federal Government into 'legislative Powers,' Art. I, § 1, '[t]he executive Power,' Art. II, § 1, and '[t]he judicial Power,' Art. III, § 1 . . . ." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992) (second and third alterations in original). Unlike some state constitutions, however, the federal Constitution does not include a clause expressly adopting the separation of powers. Instead, because "[t]he Constitution enumerates and separates the powers of the three branches of Government in Articles I, II, and III, . . . it is this 'very structure' of the Constitution that exemplifies the concept of separation of powers." Miller v. French, 530 U.S. 327, 341 (2000) (quoting INS v. Chadha, 462 U.S. 919, 946 (1983)); see also Humphrey's Ex'r v. United States, 295 U.S. 602, 629-30 (1935) ("So much is

---

[3] For additional discussion of the philosophical bases for the separation of powers, as well as the doctrine's utility for achieving "the interconnected goals of preventing tyranny and protecting liberty," see generally Rebecca L. Brown, Separated Powers and Ordered Liberty, 139 U. Pa. L. Rev. 1513, 1531-40 (1991).

5

implied in the very fact of the separation the powers of these departments by the Constitution . . . .").[4]

¶7 The Constitution's structure advances separation through deliberate calibration of incentives and control between the branches. To attain a lasting separation, the Framers did not place their trust in mere "parchment barriers against the encroaching spirit of power." Federalist No. 48, supra, at 305. Rather, they "built into the tripartite Federal Government . . . a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." Clinton v. Jones, 520 U.S. 681, 699 (1997) (alteration in original) (quoting Buckley v. Valeo, 424 U.S. 1, 122 (1976)).[5] Specifically, the Constitution gives "to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others," therefore guaranteeing "security against a gradual concentration

---

[4] "Obviously, then, the Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).

[5] See United States v. Klein, 80 U.S. (13 Wall.) 128, 147 (1872) ("It is the intention of the Constitution that each of the great co-ordinate departments of the government——the Legislative, the Executive, and the Judicial——shall be, in its sphere, independent of the others."); see also Loving v. United States, 517 U.S. 748, 757 (1996) ("Even when a branch does not arrogate power to itself, moreover, the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties." (citing Mistretta v. United States, 488 U.S. 361, 397-408 (1989)).

of the several powers in the same department."  Federalist No. 51 (James Madison), supra, at 318-19.[6]

¶8  When structuring the federal judiciary, the Framers knew from experience the perils of adopting a separation of powers in name without paying appropriate attention to the incentives affecting individual judges.  By the time of the Constitutional Convention, "[t]he Framers of our Constitution lived among the ruins of a system of intermingled legislative and judicial powers, which had been prevalent in the colonies long before the Revolution."  Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 219 (1995).  Several colonial legislative bodies not only reviewed judicial decisions but also "correct[ed] the judicial process through special bills or other enacted legislation."  Id.[7]  Some early state legislatures——Virginia, for example——possessed and employed substantial control over judicial salaries and tenure, rivaling the British government's

---

[6] See also Victoria Nourse, Toward a "Due Foundation" for the Separation of Powers: The Federalist Papers as Political Narrative, 74 Tex. L. Rev. 447, 473-74 (1996) ("[T]o protect the institution, one must protect the persons within the institution.  Private interest must not dictate public interest.  Thus, individual officers should be as independent as possible from influence by other branches when it comes to matters in which their personal interest may obscure their public duties.  And that means security for persons——the security from fear that one's livelihood will be at risk if one pursues the obligations of office." (footnote omitted)).

[7] For additional discussion of special legislation in colonial America, see generally Evan C. Zoldan, Reviving Legislative Generality, 98 Marq. L. Rev. 625, 660-79 (2014).

absolute authority that helped spark the Revolution. Federalist No. 48, supra, at 307-08 (citing Thomas Jefferson, Notes on the State of Virginia (1781)); see also The Declaration of Independence (U.S. 1776) ("[The King of Great Britain] has made Judges dependent on his Will alone, for the tenure of their offices, and the amount and payment of their salaries.").

¶9 As a reaction to the Framers' experiences with compromised judicial independence, Article III of the federal Constitution "protects liberty" and "implement[s] the separation of powers" in part "by specifying the defining characteristics of Article III judges." Stern v. Marshall, 564 U.S. 462, 483 (2011). Article III provides that federal judges "shall hold their Offices during good Behaviour" and, "at stated Times, receive . . . Compensation, which shall not be diminished during their Continuance in Office." U.S. Const. art. III, § 1. Both provisions evince a recognition that "a power over a man's subsistence amounts to a power over his will." Federalist No. 79 (Alexander Hamilton), supra, at 471 (emphasis omitted); see United States v. Hatter, 532 U.S. 557, 568 (2001) (observing that the Constitution "help[s] to secure an independence of mind and spirit necessary if judges are 'to maintain that nice adjustment between individual rights and governmental powers which constitutes political liberty" (quoting Woodrow Wilson, Constitutional Government in the United States 143 (1911))); United States v. Will, 449 U.S. 200, 218 (1980); cf. Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1872) ("[I]t is a general principle of the highest importance to the proper administration

of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."). By insulating individual federal judges from manipulation by Congress or the Executive, the Framers assured that the Judiciary as a whole could exercise genuinely independent judgment.

¶10 Over time, the Supreme Court has both defended the independence of judges and protected the judicial power from encroachment. Thus, the Court has held that even marginal changes in judicial salaries violate the constitutional prohibition on diminishment of compensation. See Hatter, 532 U.S. at 578 (imposition of Social Security taxes on sitting judges); Will, 449 U.S. at 230 (revocation of scheduled pay increase). The Court has also held that the other branches may not "confer the Government's 'judicial Power' on entities outside Article III." Stern, 564 U.S. at 484. Accordingly, "Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch." Plaut, 514 U.S. at 218 (citing Hayburn's Case, 2 U.S. (2 Dall.) 409 (1792)). Neither may Congress "prescribe rules of decision to the Judicial Department of the government in cases pending before it." Id. (internal quotation mark omitted) (quoting United States v. Klein, 80 U.S. (13 Wall.) 128, 146 (1872)). Such decisions show clear adherence to the precept that "[a] Judiciary free from control by the Executive and Legislature is essential if there is a right to have claims decided by judges

9

who are free from potential domination by other branches of government." N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 58 (1982) (plurality) (quoting Will, 449 U.S. at 217-18).[8]

¶11 These separation of powers principles, established at the founding of our nation and enshrined in the structure of the United States Constitution, inform our understanding of the separation of powers under the Wisconsin Constitution. Like its federal counterpart, "[o]ur state constitution . . . created three branches of government, each with distinct functions and powers," and "[t]he separation of powers doctrine is implicit in this tripartite division." Panzer v. Doyle, 2004 WI 52, ¶48, 271 Wis. 2d 295, 680 N.W.2d 666, overruled on other grounds by Dairyland Greyhound Park, Inc. v. Doyle, 2006 WI 107, 295 Wis. 2d 1, 719 N.W.2d 408. Three clauses of the Wisconsin Constitution embody this separation: Article IV, Section 1 ("[t]he legislative power shall be vested in a senate and assembly"); Article V, Section 1 ("[t]he executive power shall be vested in a governor"); and Article VII, Section 2 ("[t]he

---

[8] See also The Federalist No. 78, at 465 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("The complete independence of the courts of justice is peculiarly essential in a limited Constitution."); cf. 1 William Blackstone, Commentaries on the Laws of England 269 (Philadelphia 1771) (noting that, if the legislature subsumes the judiciary, "the life, liberty, and property of the subject would be in the hands of arbitrary judges, whose decisions would be then regulated only by their own opinions, and not by any fundamental principles of law; which though legislators may depart from, yet judges are bound to observe").

judicial power . . . shall be vested in a unified court system"). See State v. Washington, 83 Wis. 2d 808, 816, 266 N.W.2d 597 (1978). Before discussing in greater detail Wisconsin's law of separated powers and judicial independence, we will first describe the collision between branches in the present case: the Board's disciplinary review of Judge Gabler's decision to postpone a criminal defendant's sentencing.

## II. BACKGROUND

¶12 At the outset, it is important to understand the context in which Judge Gabler made the challenged January 2012 decision. The Eau Claire District Attorney's office filed a criminal complaint in late July 2011 alleging that Leigh M. Beebe sexually assaulted K.L., a minor. An amended complaint filed in early August added charges against Beebe for allegedly sexually assaulting K.H., also a minor. Initially, Judge Gabler set a January 2012 trial for all charges in the amended complaint, but in December 2014 he granted Beebe's severance motion and ordered separate trials for the charges involving each victim. At the January trial, a jury convicted Beebe of sexually assaulting K.L.

¶13 At a subsequent scheduling conference on January 18, 2012, Judge Gabler scheduled Beebe's trial on the charges involving K.H. for August 7-8, 2012. The State then asked Judge Gabler to sentence Beebe immediately for the January conviction. Invoking the victims rights statute to argue that K.L. was "entitled to some finality," the assistant district attorney suggested that the court should not "delay [sentencing Beebe]

11

for seven, eight or longer months to resolve . . . other matters."

¶14 After considering the State's arguments, Judge Gabler exercised his discretion and denied the State's request to sentence Beebe for the January conviction before the August trial. He began by considering K.L.'s rights as a victim. Referring to Wis. Stat. § 950.04(1v)(k), which assures victims a "speedy disposition" of cases to "minimize the length of time they must endure the stress of their responsibilities" in a criminal matter, Judge Gabler observed that because K.L. had already testified at trial "her active participation in the matter, other than giving a . . . victim statement at the sentencing, [was] concluded." He also noted that the terms of Beebe's bond would continue to keep K.L. safe from her assailant. Turning to Beebe's rights as a defendant, Judge Gabler acknowledged that sentencing him to prison could leave him with inadequate access to his attorney as they prepared for a complicated second trial. Finally, Judge Gabler considered the efficient administration of justice. Allowing time for the Department of Corrections (DOC) to prepare a presentence investigation report would delay sentencing on the January conviction until at least early April, and sentencing Beebe to prison would "impose[] a huge burden on the court and on the county to retrieve him" for an August trial.

¶15 K.L. contacted the Department of Justice's Office of Crime Victim Services (CVS) in April 2012 to express concern about Judge Gabler's decision to postpone Beebe's sentencing.

12

The Victim Resource Center Coordinator brought this concern to Judge Gabler's attention in a June 2012 letter, explaining that K.L "want[ed] closure in her case as soon as possible" and that "[t]he long delay between the jury trial and sentencing [was] causing [K.L.] extreme stress and anxiety." Citing Article I, Section 9m of the Wisconsin Constitution and Wis. Stat. § 950.04(1v)(k), the letter requested that Judge Gabler "consider sentencing Mr. Beebe as soon as possible."

¶16 In a responsive letter to CVS two weeks later, Judge Gabler expanded on the reasoning articulated at the January scheduling conference. The letter began and ended by recognizing K.L's rights as a victim and placing those rights in the context of his entire decision:

> [K.L.'s] stress and anxiety and her rights as a victim are but one aspect of a variety of factors that I must consider in resolving this <u>entire</u> case.
>
> . . . .
>
> . . . I understand and acknowledge the stress and anxiety that [K.L.] feels. I understand and acknowledge that the long delay between Mr. Beebe's January 11, 2012 conviction and his sentencing is not ideal. In my 13 years as a circuit court judge I have never had a case such as this where sentencing takes place more than two or three months after the conviction, but . . . this is an unusual case with unusual circumstances that are beyond my control. I have, to the best of my ability, taken into consideration all relevant factors based upon the timing of sentencing.

After describing the discretion that circuit courts possess to manage their busy dockets, Judge Gabler offered five detailed reasons for postponing sentencing: (1) if sentenced to prison,

13

Beebe's "absence from the community would have a significant deleterious effect upon his attorney's ability to adequately prepare for trial"; (2) the DOC could not complete a sufficiently comprehensive presentence investigation until after the August trial because "Beebe . . . constitutionally [could not] be compelled to discuss any facts or circumstances <u>relating to</u> the alleged sexual assault of [K.H.]" before the trial; (3) whether a jury convicted Beebe at the August trial would affect the appropriate sentence for the January conviction; (4) conducting two sentencings would "cause other governmental agencies or departments to spend money unnecessarily" because it "would require the Sheriff to [retrieve] him [for the August trial] and would require the [DOC] to conduct two separate presentence investigations"; and (5) Beebe's likely appeal from the sentence would seriously hamper proceedings in the second trial "because the entire court file [would be] physically shipped . . . to the [c]ourt of [a]ppeals."

¶17 Judge Gabler therefore declined to accelerate Beebe's sentencing in response to the letter.[9] Beebe pled no contest to

---

[9] Testifying before the circuit court in the present case, Judge Gabler provided additional facts about his response to the letter, which he immediately thought might be an "impermissible ex parte communication involving a pending case." After considering the rules governing ex parte communications and consulting with a member of the judicial commission, Judge Gabler remained resolute in his decision not to adjust Beebe's sentencing date in response to the letter. He determined that any change might be the product of improper influence, and he observed that, if he notified the parties' attorneys that he was acting in response to the letter, he would violate the Wis. Stat. § 950.095 requirement that he keep the letter

(continued)

14

all remaining charges against him on August 6, 2012, and on October 18, 2012, Judge Gabler imposed sentence with respect to both the January and August convictions.

¶18 K.L. submitted a formal complaint to the Board on August 2, 2012.  The complaint alleged that Judge Gabler's decision to postpone sentencing abridged her speedy disposition right under Wis. Stat. § 950.04(1v)(k) and her rights to timely disposition and protection from the accused under Article I, Section 9m of the Wisconsin Constitution.  Judge Gabler received notice of the complaint on October 23, 2012, and he and his attorney submitted responses the following month.

¶19 The Board issued a probable cause determination in February 2013.  Under the heading "Conclusions of Law," the Board asserted——without analysis——its authority to review Judge Gabler's decision:

> Respondent Gabler is a "public employee" and a "public official" within the meaning of Wis. Stat. § 950.09(2)(a) . . . .  Gabler is also a "judge" within the meaning of Wis. Stat. § 950.09(2)(b). Gabler is therefore subject to the Board's statutory authority to determine whether there is probable cause to believe that he violated any of the crime victim rights alleged by K.L.

---

confidential.  As the circuit court observed in its review of the Board's Decision, "the type of communication involved here was specifically directed to gain a procedural advantage, that is one party's desire to change the sentencing date without notice to any other parties to the criminal case."

Based on the evidence in its possession,[10] the Board did not find probable cause to conclude that Judge Gabler violated K.L's right to protection from Beebe during the criminal proceedings. It did, however, find probable cause to conclude that Judge Gabler violated K.L's statutory and constitutional rights to a timely disposition of the criminal matter by postponing Beebe's sentencing on the January 2012 conviction. An order accompanying the probable cause determination offered both K.L. and Judge Gabler the opportunity to request an evidentiary hearing and challenge any of the Board's preliminary findings of fact.

¶20 Judge Gabler responded in early March 2013 with a motion seeking dismissal of both the complaint and the probable cause determination. Among other bases for dismissal, he insisted that "the Board's review of [his] decisions intrude[d] upon the judiciary's core constitutional powers and violate[d] the separation of powers doctrine." As alternative relief in the event the Board denied his motion to dismiss, he also requested an evidentiary hearing to develop the factual record underlying his discretionary decisions.

---

[10] The propriety of the means by which the Board obtained the records underlying its probable cause determination, as well as its eventual Decision, was the subject of extensive discussion in the parties' briefs. Because we do not reach the due process, procedural irregularity, jurisdictional, or substantial evidence issues argued by the parties, we have not included a lengthy recitation of the facts related to those claims.

¶21 The Board denied his motion on July 24, 2013, and, two days later, issued its Final Decision and Order (the "Decision") on K.L.'s complaint. Once again, the Board determined, without analysis, that Judge Gabler met the definition of "public employee" and "public official" in Wis. Stat. § 950.09(2)(a) and was "therefore subject to the Board's statutory authority to determine whether he violated the rights of a crime victim under Wis. Stat. ch. 950, Wis. Stat. ch. 938, or [A]rticle I, [S]ection 9m of the Wisconsin Constitution, and to impose a remedy for any rights violation found."[11] Following a discussion that mirrored its probable cause analysis, the Board stated its conclusion regarding K.L.'s speedy disposition right:

> [T]he four factors identified at the January 18, 2012, scheduling conference as the basis for delaying Beebe's sentencing until after the August 7-8, 2012, trial, singly or in combination, lacked a factual basis, a legal basis, or both; unreasonably delayed Beebe's sentencing; and therefore violated K.L.'s crime victim right under Wis. Stat. § 950.04(1v)(k) to a speedy disposition of the case in which K.L. was involved.

Based on this conclusion, "the Board also determine[d] that Gabler violated K.L.'s constitutional right to timely disposition of the case as to which K.L. was a crime victim." The Board identified no difference between the statutory and

---

[11] Unlike in its probable cause determination, the Board apparently declined to exercise authority over Judge Gabler as a "judge" under Wis. Stat. § 950.09(2)(b), which permits the Board to refer judges to the judicial commission for alleged ethical violations.

17

constitutional rights: "Although a crime victim's right to timely or speedy disposition of the case has both a constitutional and a statutory foundation, the different foundations have no practical effect on the proceedings in this case."

¶22 As a remedy for Judge Gabler's actions that the Board determined violated K.L.'s statutory and constitutional rights, the Board chose to "issue a Report and Recommendation directed to Gabler consistent with [its] Final Decision and Order."[12] Attached to its Decision, the Board included a formal notice of each party's right to file an appeal in the circuit court.

¶23 Judge Gabler initiated this review of the Board's Decision under Chapter 227 of the Wisconsin Statutes. In a thorough opinion, the Eau Claire County Circuit Court reversed the Board's Decision and remanded the matter to the Board with instructions to dismiss with prejudice the complaint against Judge Gabler. The Board appealed, and we granted Judge Gabler's petition to bypass the court of appeals.

---

[12] The Board's Report and Recommendation, which remains publicly available on its website, includes the Board's conclusion that "the court violated [K.L.'s] statutory right to a speedy disposition and constitutional right to a timely disposition." Because we now hold that the Board's Decision is void, so is the Board's remedy. We adopt the circuit court's judgment setting aside the Report and Recommendation in its entirety.

18

## III. STANDARD OF REVIEW

### A. Chapter 227 Review

¶24 "When a party appeals to the court of appeals or seeks review in this court 'from a circuit court order reviewing an agency decision,' the appellate court reviews the decision of the agency, not the decision of the circuit court." Rock-Koshkonong Lake Dist. v. DNR, 2013 WI 74, ¶53, 350 Wis. 2d 45, 833 N.W.2d 800 (quoting Lake Beulah Mgmt. Dist. v. DNR, 2011 WI 54, ¶25, 335 Wis. 2d 47, 799 N.W.2d 73). Accordingly, we review the Board's Decision rather than the circuit court's reversal of that Decision, although we benefit from the circuit court's analysis. Adams v. State Livestock Facilities Siting Review Bd., 2012 WI 85, ¶24, 342 Wis. 2d 444, 820 N.W.2d 404.

¶25 "Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in" Chapter 227. Wis. Stat. § 227.52. A court conducting a Chapter 227 review "shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action." Wis. Stat. § 227.57(5). The reviewing court shall, however, accord "due weight" to the "experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." Wis. Stat. § 227.57(10).

¶26 Emphasizing its experience exercising its legislatively delegated authority to review crime victim rights

complaints, the Board argues that this court should give "great weight" deference to its Decision. Wisconsin's case law states that, "[w]hile statutory interpretation is normally a question of law determined independently by a court, a court may give an agency's interpretation of a statute great weight deference, or due weight deference, or no deference." Rock-Koshkonong, 350 Wis. 2d 45, ¶59 (footnotes omitted). The deference framework, however, is inapposite in this case because we must determine whether an executive agency's review of a circuit court's decision comports with the separation of powers under the Wisconsin Constitution. We review that question of constitutional law de novo. Schilling v. CVRB, 2005 WI 17, ¶12, 278 Wis. 2d 216, 692 N.W.2d 623; see also Coulee Catholic Sch. v. LIRC, 2009 WI 88, ¶31, 320 Wis. 2d 275, 768 N.W.2d 868.

### B. The Constitutionality of a Statute

¶27 The parties also dispute the appropriate scope of this court's constitutional review of the Board's actions. Judge Gabler explains that "[h]e is arguing that ch. 950 is unconstitutional as applied by the [Board] in this case to a judge." But the Board counters that, because Judge Gabler challenges Wis. Stat. § 950.09(2)(a), (2)(c)-(d), and (3) to the extent those portions of the statute affect judges, his claim, to succeed, must satisfy the requirements for a facial challenge.

¶28 The Board directs our attention to Doe v. Reed, 561 U.S. 186 (2010), in which the Supreme Court considered whether, under a state public records law, disclosure of petitions in

20

support of a statewide referendum would violate the First Amendment rights of people who signed the petitions. Although the parties disagreed whether to treat the claim as a facial or an as-applied challenge, the Court observed that "[i]t obviously ha[d] characteristics of both":

> The claim is "as applied" in the sense that it does not seek to strike the [public records law] in all its applications, but only to the extent it covers referendum petitions. The claim is "facial" in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions.

Id. at 194. Explaining that "[t]he label is not what matters,"[13] the Court identified an essential attribute of the hybrid challenge: "plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs." Id. Consequently, the Court determined that the plaintiffs could prevail only if they met the standards for a facial challenge. Id.

¶29 We agree with the Board that Judge Gabler's challenge parallels the Supreme Court's characterization of the challenge in Reed:

> Gabler's claim is as-applied in that it does not seek to invalidate Wis. Stat. § 950.09[2](a), (c)-(d), and (3) in all applications, but only to the extent they cover the activities of judges. Gabler's claim is

---

[13] See also Citizens United v. FEC, 558 U.S. 310, 331 (2010) ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge.").

21

nonetheless facial in that it is not limited to Gabler's specific circumstances, but more broadly challenges all applications of those provisions to judges.

Judge Gabler by no means seeks to invalidate the entirety of Chapter 950 as contrary to the Wisconsin Constitution. But he does contend that the Board can never constitutionally take action against a judge under Wis. Stat. § 950.09(2)(a), (2)(c)-(d), or (3). To prevail, Judge Gabler therefore must meet the standard for a facial challenge and demonstrate that the disputed portions of Wis. Stat. § 950.09 "cannot be constitutionally enforced" by the Board against judges "under any circumstances." Tammy W-G. v. Jacob T., 2011 WI 30, ¶46, 333 Wis. 2d 273, 797 N.W.2d 854 (quoting Soc'y Ins. v. LIRC, 2010 WI 68, ¶26, 326 Wis. 2d 444, 786 N.W.2d 385).

## IV. ANALYSIS

¶30 When delineating the Wisconsin Constitution's lines of demarcation separating governmental powers, this court has observed that "[t]he constitutional powers of each branch of government fall into two categories: exclusive powers and shared powers. Each branch has exclusive core constitutional powers into which other branches may not intrude." State v. Horn, 226 Wis. 2d 637, 643, 594 N.W.2d 772 (1999) (citing State ex rel. Friedrich v. Cir. Ct. for Dane Cty., 192 Wis. 2d 1, 13, 531 N.W.2d 32 (1995)). "This court is highly mindful of the separation of powers. It does not engage in direct confrontation with another branch of government unless the confrontation is necessary and unavoidable." State v. Moore,

22

2015 WI 54, ¶91, 363 Wis. 2d 376, 864 N.W.2d 827; see also Integration of Bar Case, 244 Wis. 8, 48, 11 N.W.2d 604 (1943) ("The state suffers essentially by every . . . assault of one branch of the government upon another; and it is the duty of all the co-ordinate branches scrupulously to avoid even all seeming of such." (quoting In re Goodell, 39 Wis. 232, 240 (1875)).

¶31 Confronting this attack on judicial independence is both necessary and unavoidable. "[P]ower is of an encroaching nature and . . . it ought to be effectually restrained from passing the limits assigned to it." Federalist No. 48, supra, at 305. The preservation of liberty in Wisconsin turns in part upon the assurance that each branch will defend itself from encroachments by the others. "[C]ore zones of authority are to be 'jealously guarded' by each branch of government," Barland v. Eau Claire Cty., 216 Wis. 2d 560, 573, 575 N.W.2d 691 (1998) (citing Friedrich, 192 Wis. 2d at 14), meaning "[t]he co-ordinate branches of the government . . . should not abdicate or permit others to infringe upon such powers as are exclusively committed to them by the constitution," Rules of Court Case, 204 Wis. 501, 514, 236 N.W. 717 (1931). Each branch's core powers reflect "zones of authority constitutionally established for each branch of government upon which any other branch of government is prohibited from intruding. As to these areas of authority, . . . any exercise of authority by another branch of government is unconstitutional." State ex rel. Fiedler v. Wis. Senate, 155 Wis. 2d 94, 100, 454 N.W.2d 770 (1990) (citing In re

23

Complaint Against Grady, 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984)).[14]

¶32 Consequently, "one branch of the government has no authority to compel a co-ordinate branch to perform functions of judgment and discretion that are lawfully delegated to it by the constitution." Outagamie Cty. v. Smith, 38 Wis. 2d 24, 39-40, 155 N.W.2d 639 (1968). To ensure that each branch will act on its own behalf and free from improper influence by the others, the Wisconsin Constitution parallels Article III of the federal Constitution and insulates individual governmental actors from personal manipulation. See Wis. Const. art. IV, § 26(2) ("Except as provided in this subsection, the compensation of a public officer may not be increased or diminished during the term of office . . . .").

¶33 The Board contends this case does not implicate exclusive judicial power. Because Article I, Section 9m of the Wisconsin Constitution states that "[t]he legislature shall provide remedies for the violation of this section," the Board insists that the power to remedy violations of crime victim rights is, at most, shared between the judiciary and the legislature, which delegated its authority to an executive

---

[14] See also In re. Cannon, 206 Wis. 374, 382, 240 N.W. 441 (1932) ("Under our constitution the judicial and legislative departments are distinct, independent, and co-ordinate branches of the government. Neither branch enjoys all the powers of sovereignty, but each is supreme in that branch of sovereignty which properly belongs to its department.").

entity. The Board therefore contends that its review of Judge Gabler's decision neither unduly burdened nor substantially interfered with the judiciary's constitutional authority.

¶34 "Shared powers lie at the intersections of the[] exclusive core constitutional powers." Horn, 226 Wis. 2d at 643. The separation of powers doctrine "envisions a system of separate branches sharing many powers while jealously guarding certain others, a system of 'separateness but interdependence, autonomy but reciprocity.'" Friedrich, 192 Wis. 2d at 14 (quoting Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)). Like the federal Constitution,[15] the Wisconsin Constitution enumerates a calibrated structure of powers shared between the branches. See, e.g., Wis. Const. art. V, § 10(1)(a)-(b) (providing that "[e]very bill which shall have passed the legislature shall, before it becomes a law, be presented to the governor" and, "[i]f the governor approves and signs the bill, the bill shall become law"). For the Wisconsin judiciary, this means that the legislature retains the power to remove justices and judges through impeachment or address. See Wis. Const. art. VII, §§ 1, 11, 13.

---

[15] Cf. Mistretta, 488 U.S. at 426 (Scalia, J., dissenting) ("The Constitution . . . is a prescribed structure, a framework, for the conduct of government. In designing that structure, the Framers themselves considered how much commingling was, in the generality of things, acceptable, and set forth their conclusions in the document.").

¶35 In its shared powers decisions, this court has acknowledged that some legislative actions affecting the courts do not contravene the separation of powers.[16] But "the legislature is prohibited from unduly burdening or substantially interfering with the judicial branch." State v. Holmes, 106 Wis. 2d 31, 68, 315 N.W.2d 703 (1982). Thus, "[w]hen 'the exercise of administrative and legislative power ha[s] so far invaded the judicial field as to embarrass the court and impair its proper functioning,' the court will be 'compelled to maintain its integrity as a constitutional institution.'" Id. at 69 (second alteration in original) (quoting Integration of Bar, 244 Wis. at 49).

¶36 We disagree with the Board's characterization of this case as presenting a question of shared powers. Regardless of any responsibility shared between the legislature and judiciary for remedying violations of victims' rights, this case raises a more fundamental constitutional question: May an executive agency, acting pursuant to authority delegated by the legislature, review a Wisconsin court's exercise of discretion, declare its application of the law to be in error, and then sanction the judge for making a decision the agency disfavors?

---

[16] See John F. Jelke Co. v. Beck, 208 Wis. 650, 660, 242 N.W. 576 (1932) ("In Wisconsin the jurisdiction and power of the courts is conferred not by act of the legislature but by the constitution itself. While the legislature may regulate in the public interest the exercise of the judicial power, it cannot, under the guise of regulation, withdraw that power or so limit and circumscribe it as to defeat the constitutional purpose.").

Applying separation of powers principles, we conclude that the answer to this question is unequivocally no. Any other response would unconstitutionally permit an executive entity to substitute its judgment for that of the judge——effectively imposing an executive veto over discretionary judicial decision-making and incentivizing judges to make decisions not in accordance with the law but in accordance with the demands of the executive branch in order to avoid a public rebuke reinforced with the imprimatur of a quasi-judicial board.

### A. Invasion of Core Judicial Powers

¶37 No aspect of the judicial power is more fundamental than the judiciary's exclusive responsibility to exercise judgment in cases and controversies arising under the law. "It is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803). As Alexander Hamilton famously explained, "[t]he judiciary . . . has no influence over either the sword or the purse; . . . [i]t may truly be said to have neither force nor will but merely judgment." Federalist No. 78 (Alexander Hamilton), supra, at 464 (emphasis added; capitalization omitted). By vesting the judicial power in a unified court system, the Wisconsin Constitution entrusts the judiciary with the duty of interpreting and applying laws made and enforced by coordinate branches of state government. The constitution's grant of judicial power therefore encompasses "the ultimate adjudicative authority of courts to finally decide rights and responsibilities as between individuals." State v. Williams,

27

2012 WI 59, ¶36, 341 Wis. 2d 191, 814 N.W.2d 460 (citing State v. Van Brocklin, 194 Wis. 441, 443, 217 N.W. 277 (1927)).

¶38 "For more than a century, this court has been called upon to resist attempts by other branches of government to exercise authority in an exclusively judicial area." Grady, 118 Wis. 2d at 778.[17] When navigating inter-branch disputes, this court preserves a place of paramount importance for the principle that "a truly independent judiciary must be free from control by the other branches of government." Grady, 118 Wis. 2d at 782 (citing Will, 449 U.S. at 217-19). To protect that independence, this court has consistently rejected any attempt "to coerce judges in their exercise of the essential case-deciding function of the judiciary." Id. Permitting an executive agency to review judges' official actions for compliance with the victims' rights laws would upend the constitutional structure of separated powers, which allocates independent judicial power to the courts.

---

[17] See Barland v. Eau Claire Cty., 216 Wis. 2d 560, 575 N.W.2d 691 (1998) (circuit court's authority to remove judicial assistant despite collective bargaining agreement); In re Complaint Against Grady, 118 Wis. 2d 762, 348 N.W.2d 559 (1984) (time limits for judges to resolve cases); Integration of Bar Case, 244 Wis. 8, 11 N.W.2d 604 (1943) (regulation of attorneys); Cannon, 206 Wis. 374 (admission to the bar); Rules of Court Case, 204 Wis. 501, 236 N.W. 717 (1931) (statute requiring court to promulgate rules of practice and procedure); Thoe v. Chi., Milwaukee & St. Paul Ry. Co., 181 Wis. 456, 195 N.W. 407 (1923) (legislation defining the legal sufficiency of evidence); In re Court Room, 148 Wis. 109, 134 N.W. 490 (1912) (county regulation of courtroom facilities); In re Janitor of the Supreme Court, 35 Wis. 410 (1874) (interference with appointment of supreme court employee).

28

¶39 Resolute resistance to intrusions across the constitutionally constructed judicial perimeter does not represent a power play by one branch vis-à-vis another. "The purpose of the separation and equilibration of powers in general . . . was not merely to assure effective government but to preserve individual freedom." Morrison v. Olson, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting). If the judiciary passively permits another branch to arrogate judicial power unto itself, however estimable the professed purpose for asserting this prerogative, the people inevitably suffer. If the power to perform judicial duties is subject to formal penalties imposed under color of law by another branch of government, the people lose their independent arbiters of the law, the balance of powers tips, and the republican form of government is lost.

¶40 Decades ago, this court recognized the peril presented by seemingly sensible legislative acts designed to compel proper performance of judicial duties. In re Complaint Against Grady, 118 Wis. 2d 762, 348 N.W.2d 559 (1984), considered the constitutionality of a "statute requiring the withholding [of] a judge's salary for failure to decide cases within a specified time." Id. at 782. Checking legislative drift into the judicial domain, this court held that "[t]he setting and enforcement of time periods for judges to decide cases lies within an area of authority exclusively reposed in the judicial branch of government." Id. at 783. The court recognized that allowing the legislature to mandate deadlines for judges to resolve cases would threaten the judiciary's "independen[ce] in

29

the fulfillment of its constitutional responsibilities." Id. at 782.

¶41 By issuing a Decision concluding that Judge Gabler violated a victim's constitutional and statutory rights to prompt disposition of cases, the Board encroached on the exclusive judicial authority identified in Grady. The Grady court rebuffed the legislature's imposition of time limits not because the court opposed the timely administration of justice but because the legislature mandated particular judicial action. In the present case, the Board claims that the executive now possesses authority to influence the timeline for judicial decision-making in matters involving victims' rights. Like the Grady court rejecting legislative control of judicial dockets, we refuse to countenance executive interference with matters pending before the courts. The judicial power vested in Wisconsin's unified court system presumes that courts balance the legal rights of all interested parties when exercising discretion in pending matters, and our constitution and statutes make clear that courts must consider victims as part of that evaluation. But important legal protections for victims do not vest the executive branch with newfound authority to contravene bedrock principles of judicial independence.

¶42 Indeed, the Board's Decision, as well as its Report and Recommendation directed at Judge Gabler under Wis. Stat. § 950.09(3), seem mild in comparison to other means by which the Board asserts authority to influence judicial decision-making. Most significantly, the Board could financially penalize a judge

30

for exercising legal judgment by pursuing a civil action to assess a forfeiture under Wis. Stat. §§ 950.09(2)(d) and § 950.11. As the United States Supreme Court has observed in the judicial immunity context, personal "[l]iability to answer to every one who might feel himself aggrieved by the action of the judge . . . would destroy that independence without which no judiciary can be either respectable or useful." Bradley, 80 U.S. (13 Wall.) at 347. A possible financial penalty levied on a judge if an executive board disagrees with the judge's decision conjures thoughts of the ruinous commingling of governmental powers that preceded adoption of the federal Constitution.

¶43 In observing that the Board stopped short of imposing the full panoply of statutorily available penalties against Judge Gabler, we do not mean to imply that the remedies elected by the Board are inconsequential. It is one thing for citizens, politicians, or the media to criticize or second-guess judges, a cherished right that our constitutions, and this court, shield from infringement. It is a different matter entirely for the legislature to usurp constitutionally vested judicial power, adorn an executive department with all the trappings of a court, and empower that body to declare a judge's decisions in violation of a victim's constitutional and statutory rights. The disciplinary sting of the Board's actions was no less deleterious to Judge Gabler than if imposed by this court——the only body constitutionally permitted to prescribe it.

31

¶44 Availability of Chapter 227 review of the Board's decisions does not, as the Board suggests, cure a separation of powers violation because judicial review of the Board's decisions does not eliminate the external interference with official judicial action. If a judge must account for the possibility that an executive body will administer sanctions in response to the judge's discretionary decision in an official capacity, eventual Chapter 227 review does not abate the executive branch's encroachment on judicial independence. A judge cannot fulfill the constitutional duty to interpret the law in a truly neutral and impartial manner if the threat of personal legal consequences lurks in the background of every case. As Judge Gabler observes in his brief, an appellate court might affirm a judge's legal determination, but the Board could nevertheless sanction that judge for the same decision——creating an incentive for judges to decide cases in a manner inconsistent with prevailing law. Regardless of whether a court ultimately reviews the Board's decisions, allowing a coordinate branch of government to exert influence over judicial decision-making would contravene the Wisconsin Constitution's careful allocation of governmental powers, which prevents competition between a judge's personal interests and constitutional responsibilities.

¶45 An exchange during oral argument in this case highlights the untenable scenarios that could arise if we accept the Board's characterization of the scope of its authority. The Solicitor General conceded that the Board's broad understanding of its own authority under Wis. Stat. § 950.09 could allow it to

take action on a complaint against the Wisconsin Supreme Court. If the Board determined that the justices of this court violated a victim's right to prompt disposition of a case, for example, it might publicly reprimand the members of this court under Wis. Stat. § 950.09(2)(a) or even pursue a forfeiture under § 950.09(2)(d). To challenge the Board's determination, the members of this court would need to initiate a Chapter 227 action. But that Chapter 227 action would place a circuit court——and perhaps the intermediate court of appeals——in the absurd, not to mention unconstitutional, position of reviewing the Wisconsin Supreme Court's interpretation of the law. Subjecting this court's decisions to review by a circuit court would obviously interfere with our duties and responsibilities as Wisconsin's court of last resort. See Wis. Const. art. VII, § 3(2) ("The supreme court has appellate jurisdiction over all courts . . . ."); see also Williams, 341 Wis. 2d 191, ¶36 & n.13 (citing Marbury, 5 U.S. (1 Cranch) at 177).

¶46 The Board ultimately fails to recognize that its Decision constituted quasi-judicial review of a judge's legal judgment. In essence, the Board asserts the power to authoritatively decide whether a judge's official act comported with Wisconsin law, including the Wisconsin Constitution. This assertion of power contravenes the principle, judicially acknowledged in Marbury and respected for over two hundred years, that it is the province of the judiciary, not the executive, to say what the law is. Consistent with this venerable principle, our constitution vests the judicial power

33

in Wisconsin's unified court system, and that judicial power confers on judges an exclusive responsibility to exercise independent judgment in cases over which they preside. Because an executive board cannot interfere with the legal determinations judges make in an official capacity——much less declare them in violation of the constitution——the Board's claimed authority violates Wisconsin's structural separation of governmental powers.

B. Infringement on This Court's Disciplinary Authority

¶47 Accepting the Board's expansive conception of its own power would also infringe on this court's exclusive authority to discipline judges. Article VII, Section 11 of the Wisconsin Constitution provides that "[e]ach justice or judge shall be subject to reprimand, censure, suspension, removal for cause or for disability, by the <u>supreme court</u> pursuant to procedures established by the legislature." (Emphasis added.)[18] Wisconsin Stat. § 757.83(1)(a) establishes the judicial commission, which investigates and prosecutes allegations of judicial misconduct. See Wis. Stat. §§ 757.85, 757.89. Importantly, if the judicial commission's prosecution of alleged misconduct results in a recommendation that a judge be disciplined, <u>this court</u> "review[s] the findings of fact, conclusions of law and recommendations . . . and determine[s] appropriate discipline in

---

[18] As noted above, this court shares the removal power with the legislature. See Wis. Const. art. VII, §§ 1, 11, 13. The people of Wisconsin also retain a portion of removal power through the recall process. See Wis. Const. art. XIII, § 12.

34

cases of misconduct." Wis. Stat. § 757.91. By assigning exclusive responsibility for judicial discipline to this court, the Wisconsin Constitution precludes the legislative and executive branches from compromising independent adjudication in Wisconsin courts.

¶48 Allowing the Board to take disciplinary action against judges under Wis. Stat. § 950.09(2)(a), (c), and (d) would clearly contradict the constitution. "The Wisconsin Constitution provides four disciplinary alternatives for judicial misconduct: reprimand, censure, suspension and removal." In re Judicial Disciplinary Proceedings Against Aulik, 146 Wis. 2d 57, 77, 429 N.W.2d 759 (1988) (citing Wis. Const. art. VII, § 11). By its plain text, a "reprimand" of a judge under § 950.09(2)(a) would usurp this court's authority to "reprimand" under the Wisconsin Constitution by declaring a judge's conduct improper through a formal adjudicatory process. Cf. Reprimand, Black's Law Dictionary 1495 (10th ed. 2014) ("In professional legal responsibility, a form of disciplinary action that is imposed after trial or formal charges and declares the lawyer's conduct to be improper but does not limit his or her right to practice law . . . ."). And while this court's constitutional judicial discipline power does not expressly include the authority to assess a forfeiture or impose an equitable remedy, as § 950.09(2)(c) and (d) permit, allowing the legislature to create an executive board with the power to penalize or enjoin official judicial action would be anathema to the judicial independence preserved by the separation of

35

governmental powers under the Wisconsin Constitution. We cannot sustain an arrangement that sabotages the judiciary's structural independence.

¶49 Nor will we permit an executive board to arrogate reprimand authority to itself by cloaking its action in other terms. Cf. Wisconsin Carry, Inc. v. City of Madison, 2017 WI 19, ¶19, 373 Wis. 2d 543, 892 N.W.2d 233 ("We are not merely arbiters of word choice."). Here, the Board gave Judge Gabler notice of K.L.'s complaint, issued a probable cause determination, provided an opportunity to object, offered (but declined to hold) an evidentiary hearing, and issued its formal Decision. The Board determined that Judge Gabler violated K.L.'s statutory and constitutional rights, indicated that it would issue a public Report and Recommendation confidentially "directed to" Judge Gabler, and notified him of his right to appeal. These procedures resemble the judicial commission's procedures for investigating and prosecuting a judicial misconduct complaint. See Wis. Stat. §§ 757.85, 757.89. By subjecting Judge Gabler to these quasi-judicial proceedings, issuing a Decision that bore the imprimatur of disciplinary authority, and concluding that Judge Gabler violated a victim's statutory and constitutional rights as a matter of law, the Board intruded on this court's exclusive authority to reprimand judges, regardless of the label affixed to its action.

¶50 We therefore conclude that Wis. Stat. §§ 950.09(2)(a), (2)(c)-(d), and (3) and 950.11 cannot constitutionally apply to judges because they invade two exclusive aspects of judicial

authority: the judicial power vested in the unified court system and the disciplinary function vested in this court.[19] This strict conservation of the judiciary's structural independence blocks the other branches from interfering with individual rights by manipulating judicial outcomes.

## V. ADDITIONAL CONSIDERATIONS

### A. Constitutional Avoidance

¶51 Alongside the separation of powers issue, the Board argues that we should reverse the circuit court's decision because the Board did not violate Judge Gabler's right to procedural due process, any procedural errors the Board committed did not impair the fairness of its actions, the Board had jurisdiction over K.L.'s complaint, and substantial evidence supported the Board's Decision. "This court does not normally decide constitutional questions if the case can be resolved on other grounds." Adams Outdoor Advertising, Ltd. v. City of Madison, 2006 WI 104, ¶91, 294 Wis. 2d 441, 717 N.W.2d 803 (quoting Labor & Farm Party v. Elections Bd., 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984)). This case is incapable of

---

[19] Under Wis. Stat. § 950.09(2)(b), the Board may, however, refer a complaint alleging ethical violations against a judge to the judicial commission for proceedings, potentially culminating in review and disposition by this court. In this capacity, the Board has no greater authority than any other complainant filing a claim with the judicial commission. Interpretations of the law with which the Board may disagree do not belong before the judicial commission and are subject solely to appellate review.

resolution without deciding the constitutional conflict presented by the Board's exercise of its statutory powers.

¶52 Constitutional avoidance is "a matter of judicial prudence" and does not apply where the constitutionality of a statute is "essential to the determination of the case." Kollasch v. Adamany, 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981); see Clay v. Sun Ins. Office Ltd., 363 U.S. 207, 223-24 (1960) (Black, J., dissenting) ("[T]here is a judicial practice . . . under which courts do not ordinarily decide constitutional questions unless essential to a decision of the case. . . . But even the greatest of our judges have not always followed it as a rigid rule. Perhaps had they done so the great opinion of Chief Justice Marshall in Marbury v. Madison would never have been written."); Fleeman v. Case, 342 So. 2d 815, 818 (Fla. 1976); Hammond v. Bingham, 362 P.2d 1078, 1079 (Idaho 1961). Courts in other jurisdictions have also recognized that the principle of constitutional avoidance gives way where the constitutional question is of great public importance. See, e.g., State ex rel. Bland v. St. John, 13 So. 2d 161, 170 (Ala. 1943); Buckingham v. State ex rel. Killoran, 35 A.2d 903, 904-05 (Del. 1944).

¶53 Even if we agreed with the Board's non-constitutional arguments, we would nevertheless need to decide the essential question of whether the Wisconsin Constitution permits the Board to pursue disciplinary action against Judge Gabler, a separation of powers issue of great public importance. Neither party suggests any pertinent portion of Chapter 950 is ambiguous, and

there is no saving construction of the statute that would cure its constitutional infirmity.[20] Since Chapter 950 is clear, the fundamental question presented is whether application of Chapter 950 to judges violates the structural separation of powers.[21] Because we affirm the circuit court's decision on that essential constitutional question, we need not address the Board's other arguments.

---

[20] The dissent would interpret the term "public officials" in Wis. Stat. §§ 950.08-.09 to exclude judges. See, e.g., dissent, ¶133. But the statutes' plain language does not support this reading, nor did either party advance such a baseless argument. The search for a saving construction of a patently unconstitutional statute does not compel a court to adopt an absurd one. Although Chapter 950 does not define the term "public officials," the term's ordinary meaning undoubtedly encompasses judges. See State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is given its common, ordinary, and accepted meaning . . . ."). In Black's Law Dictionary, the definition of "public official" redirects to the first definition of "official," which means "[s]omeone who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers." Official, Black's Law Dictionary 1259 (10th ed. 2014). We have already established that Article VII, § 2 of the Wisconsin Constitution vests the judicial power in the unified court system, and there is no dispute that all Wisconsin judges are either appointed or elected to exercise that portion of the sovereign power. See Wis. Const. art. VII, §§ 4(1), 5(2), 7, 9. Nothing in the text of Chapter 950 supports a deviation from this plain meaning, thus setting up the inevitable constitutional conflict at issue in this case.

[21] See Bond v. United States, 134 S. Ct. 2077, 2098 (2014) (Scalia, J., concurring in the judgment) ("Since the Act is clear, the real question this case presents is whether the Act is constitutional as applied to petitioner." (emphasis omitted)).

B. First Amendment Right to Criticize Courts

¶54 Nothing in this opinion should be read as abridging political speech protected by the First Amendment to the United States Constitution. For all of the weight we assign to preserving the judiciary's independence from interference by the legislative and executive branches, we also recognize that public speech criticizing judges implicates different constitutional interests. The United States Supreme Court has held the "essential right of the courts to be free of intimidation and coercion . . . to be consonant with a recognition that freedom of the press must be allowed in the broadest scope compatible with the supremacy of order." Pennekamp v. Florida, 328 U.S. 331, 334 (1946) (citing Bridges v. California, 314 U.S. 252, 263, 265-66 (1941)). Although judges, particularly elected judges, must always guard against allowing popular pressures to influence their judgment, public speech criticizing judges does not endanger judicial independence in the same manner as legislative or executive action seeking to exert control over judges.

¶55 This court has long recognized the value of open public discussion regarding the judiciary:

> [C]ourts will not seek immunity from criticism by restraining the citizen or threatening the exercise of the right of free speech. In a democracy the best interest of society is promoted by according to the citizen the greatest freedom in the matter of discussing the relative qualifications of candidates for public office and of freely criticising any governmental department. He has a right to express his views upon the question of whether any

40

governmental department is functioning in a manner to promote the general welfare. This freedom of discussion is important in order that the citizen may be advised concerning the affairs of his government and placed in the possession of facts which will enable him, with such discrimination as he may possess, to form intelligent conclusions.

In re. Cannon, 206 Wis. 374, 406, 240 N.W. 441 (1932).

¶56 Consistent with this longstanding reverence for political speech, we emphasize that our holding does not constrain individuals or groups from criticizing judges. As the Supreme Court recently reaffirmed, the First Amendment protects not only individual speech but also speech by individuals acting in concert through a collective body. See Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2768 (2014); Citizens United v. FEC, 558 U.S. 310, 342 (2010). This opinion prohibits the legislature and the executive branch from transgressing the separation of powers by formally disciplining judges for exercising judgment, but the people may of course, individually or collectively, express opinions about judicial matters. Ultimately, because the people elect their judges in Wisconsin, they retain the strongest voice of all to approve or disapprove of judges and their decisions.

¶57 We caution, however, that reckless criticism of the courts risks undermining their role as a check on the legislative and executive branches.

The members of society have become content to accept the decisions of courts in their controversies with their fellows, and they will remain content so long as they have confidence in their courts. Restlessness, discontent, and anarchy, however, will result with the passing of confidence in the integrity of the courts,

41

and stable government will totter upon its foundations. It is for this reason that high-minded citizens refrain from impetuous and ill-founded criticism of the courts.

Cannon, 206 Wis. at 406-07. We by no means implore silence from our fellow citizens;[22] rather, we caution those who impugn the integrity of judicial decision-making that while the courts remain fervent guardians of speech, particularly political expression, the right to speak, when exercised irresponsibly, is not without cost to the stability of our republican form of government.

## C. Respect for Victims' Rights

¶58 We close by reaffirming this court's commitment to upholding the crime victims' rights enshrined in our statutes and constitution. No less than we did a decade ago, "we believe that justice requires that all who are engaged in the prosecution of crimes make every effort to minimize further suffering by crime victims." Schilling, 278 Wis. 2d 216, ¶26. Earlier this term, a concern about possible re-traumatization of victims influenced our decision permitting the Department of Justice to withhold requested public records——notwithstanding

---

[22] Bridges v. California, 314 U.S. 252, 270-71 (1941) ("The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one's mind, although not always with prefect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect." (footnote omitted)).

42

the strong public policy otherwise favoring disclosure. See Dem. Party of Wis. v. DOJ, 2016 WI 100, ¶¶14, 28-33, 372 Wis. 2d 460, 888 N.W.2d 584. Our decision today does not signal a departure from our consistent protection of victims' rights.

¶59 Although we prohibit the Board from disciplining judges because executive review of judicial decisions violates fundamental separation of powers principles, crime victims nonetheless have recourse for their grievances against judges. Wisconsin Stat. § 950.105 assures victims a mechanism for directly asserting their own rights in court. We reserve for future cases more comprehensive discussion of the interplay between victims' rights and procedural tools, such as intervention, writs of mandamus, and supervisory writs. Because victims may assert their rights in court, these procedural mechanisms could offer alternative remedies for victims seeking to vindicate their rights. And because these procedural means could offer recourse for victims within the unified court system, they would not pose a threat to the judiciary's independence.[23]

---

[23] Availability of standing for victims under Wis. Stat. § 950.105 also undermines the Board's argument that referral to the judicial commission under Wis. Stat. § 950.09(2)(b) leaves victims without an adequate remedy. Specifically, § 950.09(2)(b) permits the Board to "[r]efer to the judicial commission a violation or alleged violation by a judge of the rights of crime victims." The Board expresses concern that a judge's alleged violations of a victim's rights might not satisfy the definition of misconduct necessary for the imposition of judicial discipline. Under Wis. Stat. § 757.81(4), an allegation of "misconduct" charges a judge with
(continued)

43

## VI. CONCLUSION

¶60 The people bestowed much power on the legislature, comprised of their representatives whom the people elect to make the laws. However, ever vigilant in averting the accumulation of power by one body——a grave threat to liberty——the people devised a diffusion of governmental powers, placing judicial power, along with the authority to discipline judges, within the exclusive province of the independent judiciary. These powers may not be claimed by another branch. Just as the people of the United States at the founding of the Republic vested all federal judicial power in the Judiciary, the people of Wisconsin vested the Wisconsin judiciary with the power to exclude the coordinate branches of government from the judicial domain in order to safeguard judicial independence. The significance of preserving clear boundaries between the branches has been understood since the founding of our nation, with the role of the judiciary

---

committing a "[w]illful violation of a rule of the code of judicial ethics"——a serious ethical allegation.

We agree with the Board that Wis. Stat. § 757.81(4)(a) sets a high bar for proof of judicial misconduct, but we disagree that it leaves victims without a remedy. The Board misapprehends the proper role of the judicial commission, which does not exist to review judges' discretionary decisions. In Wisconsin, crime victims' rights are a matter of constitutional and statutory law, and Wis. Stat. § 950.105 confirms that victims may assert those rights in court. Accordingly, a victim who disagrees with a judge's legal determination may challenge that decision through existing procedural means within the court system. Contested discretionary decisions are not ethical transgressions and therefore do not belong before the judicial commission.

44

plainly recognized: "This independence of the judges is equally requisite to guard the Constitution and the rights of individuals . . . ." Federalist No. 78, supra, at 468. By conferring on an executive board the power to review and discipline judges, the legislature contradicts the Wisconsin Constitution, violates the structural separation of powers, and threatens judicial independence. We therefore hold that Wis. Stat. §§ 950.09(2)(a), (2)(c)-(d), and (3) and 950.11 are unconstitutional as applied to judges and declare the Board's Decision against Judge Gabler void.

*By the Court.*—The order of the circuit court is affirmed.

¶61  ANN WALSH BRADLEY, J., did not participate.

¶62 SHIRLEY S. ABRAHAMSON, J. *(concurring in part and dissenting in part).* I cannot join the majority opinion, which casts aside the cardinal principle of statutory interpretation: Save. Do not destroy.[1]

¶63 This court ordinarily follows the principle of constitutional avoidance. This court generally does not "decide constitutional questions if the case can be resolved on other grounds."[2]

¶64 Nevertheless, in the instant case, the majority opinion rushes headlong into determining the constitutionality of the statutes at issue without interpreting the statutes.

¶65 Disregard of bedrock, well-established principles of statutory interpretation in the instant case leads, in my opinion, to a lack of appropriate respect and constitutional concern for crime victims and the legislative and executive branches of government.

¶66 In its constitutional analysis, the majority opinion overzealously and unnecessarily forces head-on collisions between:

- Article I, Section 9m of the Wisconsin Constitution, a 1993 constitutional amendment (hereinafter sometimes referred to as the Crime Victims Amendment) ensuring

---

[1] "The cardinal principle of statutory construction is to save and not to destroy." N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30 (1937).

[2] Labor & Farm Party of Wis. v. Elections Bd., 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984).

crime victims' rights[3] (including "timely disposition of the case") and vesting the legislature with the responsibility to "provide remedies for the violation of this section,"[4] and Article VII, Section 2 of the Wisconsin Constitution vesting judicial power in the unified court system.[5] When interpreting a

---

[3] The history of the Crime Victims Amendment demonstrates that the amendment uses the phrase "privileges and protections" rather than the word "rights" but that this phrase was viewed as synonymous with the word "rights." Memorandum from Racine County District Attorney Lennie Weber to Senator Barbara Ulichny, Feb. 24, 1992 (available in the drafting file for 1991 S.J.R. 41).

[4] Article I, Section 9m of the Wisconsin Constitution provides:

Victims of crime. SECTION 9m. [As created April 1993] This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy. This state shall ensure that crime victims have all of the following privileges and protections as provided by law: timely disposition of the case; the opportunity to attend court proceedings unless the trial court finds sequestration is necessary to a fair trial for the defendant; reasonable protection from the accused throughout the criminal justice process; notification of court proceedings; the opportunity to confer with the prosecution; the opportunity to make a statement to the court at disposition; restitution; compensation; and information about the outcome of the case and the release of the accused. The legislature shall provide remedies for the violation of this section. Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law. (Emphasis added.)

[5] Article VII, Section 2 of the Wisconsin Constitution provides:

(continued)

constitutional provision, a court seeks "to give effect to the intent of the framers and of the people who adopted it."[6]

- Article VII, Section 2 of the Wisconsin Constitution vesting judicial power in the unified court system and Wis. Stat. ch. 950 (2015-16)[7] entitled Rights of Victims and Witnesses of Crime, especially §§ 950.09 and 950.11,[8] and the powers and duties of the Department of Justice and the Crime Victims Rights Board.[9]

- Victims and judges.

- The judicial branch and the legislative branch. The Wisconsin Constitution vests the legislative power in

---

Court system. SECTION 2. [As amended April 1966 and April 1977] The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature under section 14.

[6] Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶13, 278 Wis. 2d 216, 692 N.W.2d 623 (citation omitted).

[7] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[8] For the text and discussion of relevant provisions of Wis. Stat. ch. 950, see ¶¶136-185, infra.

[9] The statute creating the Crime Victims Rights Board is quoted at ¶118 n.42, infra.

a senate and assembly,[10] and Article I, Section 9m of the Wisconsin Constitution (the Crime Victims Amendment) states that "<u>the legislature shall provide remedies for the violation of the section.</u>"[11] (Emphasis added.)

- The judicial branch and the executive branch. The Crime Victims Rights Board, created by the legislature, is an executive branch agency attached to the Department of Justice.

¶67 The majority opinion declares judges and the judicial branch the "hands down" winner of these confrontations. The majority opinion's failure to analyze the Crime Victims Amendment and Chapter 950; its declaration that Wis. Stat. § 950.09(2)(a), § 950.09(2)(c)-(d), § 950.09(3), and § 950.11 are unconstitutional with respect to judges on the basis of the separation of powers doctrine; and its voiding the actions of the Crime Victims Rights Board relating to Judge Gabler unnecessarily aggrandize judicial powers at the expense of victims and the legislative and executive branches. <u>See</u>

---

[10] Article III, Section 1 provides: "The legislative power is vested in a senate and assembly."

[11] The drafting record explains that advocates supported the constitutional amendment because it provided victims with a mechanism for enforcement. <u>See</u> <u>Schilling</u>, 278 Wis. 2d 216, ¶22. <u>See also</u> Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, <u>Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993</u> at 4 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis.wisconsin.gov/digital/collection/p16831coll2/id/592/rec/5).

4

majority op., ¶¶2, 46, 53, 56, 60. Moreover, the majority opinion dismally fails to provide any guidance on the interpretation of the constitutional and statutory provisions relating to crime victims.

¶68 Accordingly, I write separately.

¶69 Before I further discuss the majority opinion's veneer of constitutional analysis, it is important to discuss Eau Claire County Circuit Court Judge William M. Gabler, Sr.'s role as the sentencing judge in the instant case.

¶70 When the crime victim asserted a claim against him, Judge Gabler had been considering a sentence in the pending criminal case. His task was to adhere to the statutes and federal and state constitutions in deciding the sentence. He had to consider the victim. He also had to consider the criminal defendant's constitutional and statutory rights to a fair trial and a fair sentencing. Notably, the Crime Victims Amendment unequivocally protects the rights of the accused. It states that nothing in the Crime Victims Amendment, "or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law."

¶71 Judge Gabler exercised his discretion in scheduling sentencing on the basis of his analysis of the facts and law. While the sentencing proceeding was pending, the Office of Crime

Victim Services in the Department of Justice communicated with the Judge about scheduling the sentencing.[12]

¶72 While being questioned by this executive branch agency during the pending judicial proceedings, Judge Gabler displayed a steadfast commitment——as all judges and justices should——to being neutral, fair, impartial, and nonpartisan in performing judicial duties. The Judge was careful, however, to avoid ex parte communications (which raise serious issues of judicial ethics).[13] The Judge made it clear that he would listen to and address the concerns presented, but that he would not be a slender reed easily buffeted by winds of pressure about sentencing.

¶73 Not all victims, circuit court or appellate judges or justices, lawyers, court observers, legislators, members of the executive branch, or the public would necessarily agree with Judge Gabler's discretionary decision regarding sentencing. Neither the majority nor I need decide whether we agree with the Judge's decision on the timing of the sentencing. That's not the issue before this court. Court procedures exist for

---

[12] See majority op., ¶16 (quoting Judge Gabler's response to the initial letter from the Crime Victims Services explaining his reasons for the date he chose for sentencing).

[13] See majority op., ¶¶12-17. The provision in the Wisconsin Code of Judicial Conduct regarding ex parte communications is SCR 60.04(1)(g): "A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding . . . ." (The exceptions stated are not relevant in the instant case.)

6

deciding the validity of a circuit court judge's sentencing decisions in a criminal case.

¶74 Judge Gabler raises substantive legal issues before this court, namely the constitutionality of the challenged statutory provisions in Chapter 950 of the statutes. I address them.

¶75 In Part I, I set forth the applicable rules of statutory interpretation, a task the majority opinion never performs.

¶76 In Part II, I apply the rules applicable to interpreting the Wisconsin Constitution. I analyze the historical background and text of the Crime Victims Amendment, a task the majority opinion never performs. The constitutional debates and the general history of the adoption of the Amendment are also informative in interpreting the challenged statutory provisions.

¶77 In Part III, with the Crime Victims Amendment in mind, I apply the applicable statutory interpretive rules to the challenged statutory provisions. I conclude that the majority opinion's declaration of statutory unconstitutionality on the basis of the doctrine of separation of powers is not tethered to the constitutional or statutory texts. The texts of the challenged statutory provisions have a constitutional interpretation that this court should adopt. I do so.

¶78 In Part IV, I assess the conduct of the Department of Justice and the Crime Victims Rights Board in the instant case

7

to determine whether each has kept within or exceeded its statutory powers or violated the constitution.

¶79 For the reasons set forth, I conclude that the correct interpretation of the applicability of the challenged statutory provisions to judges depends on the text of the Crime Victims Amendment, the interpretation of the challenged statutory provisions, and the effect of other statutory provisions and the common law.

¶80 As properly interpreted, the challenged provisions of Chapter 950 are constitutional with respect to judges.

- Wisconsin Stat. § 950.08(3) does not authorize the Department of Justice to mediate a complaint against a judge.

- Wisconsin Stat. § 950.09(2) does not authorize the Crime Victims Rights Board to determine probable cause or investigate a crime victim's complaint against a judge.

- Wisconsin Stat. § 950.09(2)(a) does not authorize the Crime Victims Rights Board to "reprimand" a judge.

- Wisconsin Stat. § 950.09(2)(b) authorizes the Crime Victims Rights Board to refer a complaint about a judge to the Judicial Commission.

- Wisconsin Stat. § 950.09(2)(c) does not authorize the Crime Victims Rights Board to seek equitable relief against a judge.

- Wisconsin Stat. § 950.09(2)(d) does not authorize the Crime Victims Rights Board to impose a forfeiture on a

judge: A judge enjoys absolute immunity for actions taken in his or her official capacity.

- Wis. Stat. § 950.09(3) authorizes the Crime Victims Rights Board to issue a non-binding Report and Recommendation concerning crime victims rights and services. This court should not silence critiques of the judicial system authorized by the legislature.

- The Department of Justice and the Crime Victims Rights Board did not, in several instances, correctly interpret and apply the challenged statutes.

I

¶81 I first consider the rules of statutory interpretation to be applied when a challenge is made to the constitutionality of a statute. The majority opinion jumps right over this basic first step.

¶82 When the constitutionality of a statute is in question, "[t]he rule oft stated in our cases is that statutes are presumed to be constitutional . . . ."[14] In its haste to reach its declaration of unconstitutionality, the majority opinion does not even pay lip service to this rule.

¶83 "Because of the strong presumption in favor of constitutionality, a party bringing a constitutional challenge to a statute bears a 'heavy burden'" to prove that the statute

---

[14] _Demmith v. Wis. Judicial Conference_, 166 Wis. 2d 649, 662 n.9, 480 N.W.2d 502 (1992) (citing _State v. Holmes_, 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982)).

9

is unconstitutional.[15]  The challenger has to prove, and the court has to be persuaded, that the statute is unconstitutional "beyond a reasonable doubt."[16]

¶84 In its haste to reach its declaration of unconstitutionality, the majority opinion does not even pay lip service to this rule either.

¶85 Because "courts have a duty to uphold statutes when they reasonably can," State v. Zarnke, 224 Wis. 2d 116, 142, 589 N.W.2d 370 (1999) (Prosser, J., dissenting); see also Zarnke, 224 Wis. 2d at 142-43 (Prosser, J., dissenting) (collecting cases), this court has an obligation to "search [] for a means of sustaining the act, not for reasons which might require its condemnation."  State ex rel. Harvey v. Morgan, 30 Wis. 2d 1, 13, 139 N.W.2d 585 (1966).

¶86 The presumption of constitutionality of a statute and a court's obligation to search for reasons to sustain a statute necessarily inform this court's interpretation of a statute.

¶87 The parties' briefs address statutory interpretation, including legislative history, in their focus on issues of constitutionality.  Clearly the parties followed a litigation strategy:  Both Judge Gabler and the Crime Victims Rights Board have sought a ruling on the constitutionality of the statutory

---

[15] Wis. Med. Soc'y, Inc. v. Morgan, 2010 WI 94, ¶37, 328 Wis. 2d 469, 787 N.W.2d 22 (quoting State v. Carpenter, 197 Wis. 2d 252, 276, 541 N.W.2d 105 (1995)).

[16] State v. Scruggs, 2017 WI 15, ¶13, 373 Wis. 2d 312, 891 N.W.2d 786; State v. Smith, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90.

provisions at issue. Judge Gabler wants the statutes declared unconstitutional as to judges. The Crime Victims Rights Board, by its counsel the Wisconsin Department of Justice, wants the statutes declared constitutional as to judges.

¶88 Adopting the parties' litigation strategy "hook, line and sinker," the majority opinion centers on the parties' constitutional arguments.

¶89 I would have preferred to ask the parties to brief selected statutory interpretation issues. As I have written numerous times, this court benefits from briefs. Briefing and the adversarial process are more apt to lead a court to the right conclusion and are a fairer process for the litigants.[17] Fortunately, in the instant case, no further facts need to be developed to write on the issue of statutory interpretation.

¶90 In any event, principles governing constitutional avoidance and a court's decision making function do not rest on the parties' litigation strategy. "The parties may prefer a decision on constitutional grounds; but we, of course, are not

---

[17] "The rule of law is generally best developed when issues are raised by the parties and then tested by the fire of adversarial briefs and oral arguments." State v. Howes, 2017 WI 18, ¶104 n.7, 373 Wis. 2d 468, 893 N.W.2d 812 (Abrahamson, J., dissenting) (quoting City of Janesville v. CC Midwest, Inc., 2007 WI 93, ¶68, 302 Wis. 2d 599, 734 N.W.2d 428 (Ann Walsh Bradley, J., dissenting)).

See also Dairyland Greyhound Park, Inc., v. Doyle, 2006 WI 107, ¶335, 295 Wis. 2d 1, 719 N.W.2d 408 (Roggensack, J., concurring in part & dissenting in part) ("As various members of this court have said, we should not 'reach out and decide issues' that were not presented to the court by the parties.").

11

bound by their litigation strategies." <u>Wyman v. James</u>, 400 U.S. 309, 345 n.7 (1971) (Marshall, J., dissenting).

¶91 The constitutionally protected rights of crime victims and the independence and interdependence of the three branches of government give the issue of statutory interpretation added significance.

¶92 Accordingly, I address the interpretation of the challenged statutes.

¶93 The presumption of constitutionality underlies three prevailing rules of statutory interpretation, sometimes referred to collectively as the canon of constitutional avoidance.[18] These rules govern the instant case and were not systematically applied by the majority opinion:

---

[18] The canon of constitutional avoidance was most famously restated in Justice Brandeis's concurrence in <u>Ashwander v. Tennessee Valley Auth.</u>, 297 U.S. 288 (1936), in which he extolled a "series of rules under which [the Court] has avoided passing upon a large part of all the constitutional questions pressed upon it for decision." <u>Ashwander</u>, 297 U.S. at 346 (Brandeis, J., concurring).

(1) A court should resolve a case on non-constitutional grounds if possible.[19]

(2) A court should interpret a statutory provision at issue in a manner that renders the statute constitutional by construing the statute to avoid a

---

[19] Ordinarily a court "will not decide a constitutional question if there is some other ground upon which to dispose of the case." Escambia Cty. v. McMillan, 466 U.S. 48, 51 (1984) per curiam ). Accord Kollasch v. Adamany, 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51 (1981) ("As a matter of judicial prudence, a court should not decide the constitutionality of a statute unless it is essential to the determination of the case before it."); Labor & Farm Party of Wis. v. Elections Bd., 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984) ("We need not reach these various constitutional issues because we conclude the case can be resolved on statutory construction grounds alone. This court does not normally decide constitutional questions if the case can be resolved on other grounds"); DeBruin v. St. Patrick Congregation, 2012 WI 94, ¶42, 343 Wis. 2d 83, 816 N.W.2d 878 (Crooks, J., concurring) ("[W]e do not normally reach constitutional issues in cases that are resolvable on other grounds . . . .").

constitutional problem,[20] or, when facing equally plausible interpretations of a statute, choosing the constitutional one.[21]

---

[20] See, e.g., Kenosha Cty. DHS v. Jodie W., 2006 WI 93, ¶20, 293 Wis. 2d 530, 716 N.W.2d 845 ("Where the constitutionality of a statute is at issue, courts [should] attempt to avoid an interpretation that creates constitutional infirmities."); Am. Family Mut. Ins. v. DOR, 222 Wis. 2d 650, 667, 586 N.W.2d 872 (1998) ("A court should avoid interpreting a statute in such a way that would render it unconstitutional when a reasonable interpretation exists that would render the legislation constitutional."); Norquist v. Zeuske, 211 Wis. 2d 241, 250, 564 N.W.2d 748, 752 (1997) (A court "must not construe a statute to violate the constitution if it can possibly be construed consistent with the constitution.") (emphasis added); Demmith v. Wis. Judicial Conference, 166 Wis. 2d 649, 664 n.13, 480 N.W.2d 502 (1992) (A court applies a saving interpretation "if at all possible, in a manner that will preserve the statute as a constitutional enactment."); Baird v. La Follette, 72 Wis. 2d 1, 5, 239 N.W.2d 536, 538 (1976) ("Where there is serious doubt of constitutionality, we must look to see whether there is a construction of the statute which is reasonably possible which will avoid the constitutional question."); Ashwander, 297 U.S. at 348 (Brandeis, J., concurring) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

(3) If a saving interpretation is not possible, a court should sever unavoidably unconstitutional provisions or applications of the statute and leave the remainder intact.[22] It "is axiomatic that a 'statute may be

---

[21] See, e.g., Adams v. Northland Equip. Co., Inc., 2014 WI 79, ¶46, 356 Wis. 2d 529, 850 N.W.2d 272 ("[W]hen given alternative statutory interpretations, we will select the interpretation that results in a constitutionally sufficient statute."); State ex rel. Strykowski v. Wilkie, 81 Wis. 2d 491, 526, 261 N.W.2d 434 (1978) ("Given a choice of reasonable interpretations of a statute, this court must select the construction which results in constitutionality."); Clark v. Martinez, 543 U.S. 371, 381 (2005) (If there are multiple "competing plausible interpretations" of a statute, the canon of constitutional avoidance instructs a court to choose the constitutional application based on the "reasonable presumption that Congress did not intend the alternative which raises serious doubts."); Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

[22] See Wis. Stat. § 990.001(11), which provides for severability as follows:

SEVERABILTIY. The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application.

See also Adrian Vermeule, Saving Constructions, 85 Geo L.J. 1945, 1950-51 (1997) ("[A]ll forms of severability are triggered only by a ruling on the merits of a constitutional question . . . ."); Kevin C. Walsh, Partial Unconstitutionality, 85 N.Y.U. L. Rev. 738, 746-47 (2010) ("[I]f the statute has unconstitutional applications, they are severable from the constitutional applications.") (citations omitted).

(continued)

15

invalid as applied to one state of facts and yet valid as applied to another.'"[23]

¶94 In sum, my analysis of the issues presented follows these established rules of statutory interpretation.

¶95 The majority opinion does not. Its defense: "This case is incapable of resolution without deciding the constitutional conflict presented by the Board's exercise of its statutory powers." Majority op., ¶51. I disagree. The court should examine the statutes to decide the Board's powers before deciding the constitutionality of the statutes.

II

¶96 Before I analyze the applicability of the challenged (and presumably constitutional) statutory provisions to judges, I consider the state constitution Crime Victims Amendment. The challenged statutory provisions were created or amended subsequent to the adoption of the constitution's Crime Victims Amendment and are to be interpreted in light of the Amendment.

---

Severability is not without limits. Thus, "[a]scertaining the severability of an unconstitutional provision from the remainder of a statute requires a determination of legislative intent" and "the viability of the severed portion standing alone." Burlington N., Inc. v. City of Superior, 131 Wis. 2d 564, 580-81, 388 N.W.2d 916 (1986); Ayotte, 546 U.S. at 330 ("[T]he touchstone for any decision about [a severability] remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'") (quoting Califano v. Westcott, 443 U.S. 76, 94 (1979) (Powell, J., concurring in part and dissenting in part)).

[23] Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 329 (2006) (quoting Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 289 (1921)).

16

¶97 The Amendment, Article I, Section 9m of the Wisconsin Constitution, provides as follows:

Victims of crime. SECTION 9m. [As created April 1993] This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy. This state shall ensure that crime victims have all of the following privileges and protections as provided by law: timely disposition of the case; the opportunity to attend court proceedings unless the trial court finds sequestration is necessary to a fair trial for the defendant; reasonable protection from the accused throughout the criminal justice process; notification of court proceedings; the opportunity to confer with the prosecution; the opportunity to make a statement to the court at disposition; restitution; compensation; and information about the outcome of the case and the release of the accused. The legislature shall provide remedies for the violation of this section. Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law. (Emphasis added.)

¶98 The court has set forth the method for interpreting a Wisconsin constitutional provision and has used this method in interpreting the Crime Victims Amendment. See Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶16, 278 Wis. 2d 216, 692 N.W.2d 623)(citations omitted).[24]

¶99 The court examines the constitutional debates and practices at the time of the drafting of the provision (including the general history relating to the constitutional amendment and the legislative history of the amendment), the text of the constitutional provision, and the earliest

---

[24] See also Polk Cty. v. State Public Defender, 188 Wis. 2d 665, 674, 524 N.W.2d 389 (1994); State v. Beno, 116 Wis. 2d 122, 136-37, 341 N.W.2d 668 (1984).

17

interpretation of the provision by the legislature as manifested in the first law enacted after the ratification of the constitutional provision. Naturally, judicial precedent interpreting the Amendment also matters.

¶100 The Amendment was obviously designed with crime victims in mind. Following a national trend of "constitutionalizing" victims' rights,[25] Wisconsin citizens voted to adopt the Crime Victims Amendment in 1993.[26] Although crime victims were already protected by statute in Wisconsin,[27] the proponents of the Crime Victims Amendment sought to "constitutionalize" victims' rights. Proponents contended that

---

[25] When the Crime Victims Amendment was adopted, 12 other states' constitutions recognized victims rights. Currently, 32 states have amended their constitutions to include a provision relating to crime victims. The remaining 18 states, the Federal government, and the District of Columbia have statutes that recognize victims' rights.

For a compendium containing each jurisdiction's laws relating to the rights of crime victims, see https://law.lclark.edu/live/news/23544-victims-rights-law-by-state?.

For a discussion of the victims' rights movement and the issues presented, see Shirley S. Abrahamson, Redefining Roles: The Victims' Rights Movement, 1985 Utah L. Rev. 517.

[26] The Crime Victims Amendment was adopted by two consecutive Wisconsin legislatures. See 1991 S.J.R. 41, 1993 S.J.R. 3. Not all legislators favored it.

[27] See Chapter 219, Laws of 1979 (creating Chapter 950 of the Wisconsin Statutes, which established a statutory bill of rights for victims and witnesses of crimes). Chapter 950, including the bill of rights, was substantially amended by 1997 Act 181 after the ratification of the state constitution Crime Victims Amendment.

a constitutional guarantee was "necessary to give weight to the statutory language and to ensure that all crime victims have access to the same services."[28]

¶101 The drafting record of the Crime Victims Amendment explains that advocates supported the Amendment because it provided victims with a mechanism for enforcement.[29] See Schilling, 278 Wis. 2d 216, ¶22; Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993, at 4 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis.wisconsin.gov/digital/collection/p16831coll2/id/592/rec/5).

¶102 Three observations should be made regarding the Crime Victims Amendment. First, the constitution's Amendment is written in terms of the "privileges and protections" of crime victims, not "rights." Second, and relatedly, the Amendment unequivocally protects the rights of the accused. Third, the Amendment declares that the legislature "shall provide remedies for the violation of this section."

¶103 First, the text of the Crime Victims Amendment is framed in terms of the "privileges and protections" of crime

---

[28] Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993, at 3 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis.wisconsin.gov/digital/collection/p16831coll2/id/592/rec/5).

[29] See Brief of Respondent-Appellant Crime Victims Rights Board at 20-21.

victims, not "rights." A letter in the drafting file explains the genesis of the terminology "privileges and protections" and suggests that it is due little weight as an interpretive matter:

> Sen. Adelman objected to the use of the term "right" in SJR 41. It became apparent that his objection was based more on the symbolism attached to the notion of "crime victims rights" than to any genuine legal or substantive meaning of the "rights" afforded.... We have, therefore, agreed to substitute the phrase "privileges and protections" for "rights" in the introduction to the enumerated provisions.[30]

¶104 Second, and relatedly, it appears that a central theme threading through the passage of the Crime Victims Amendment was to protect the rights of an accused. State Senator Lynn Adelman persuaded the Joint Resolution's principal author, Senator Barbara Ulichny, to add the following language to the Amendment: "Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law." This language reflects the understanding of the drafters and leaders in the State Senate that "enactment of the amendment will not lead to a balancing of a defendant's

---

[30] Memorandum from Racine County District Attorney Lennie Weber to Senator Barbara Ulichny, Feb. 24, 1992 (available in the drafting file for 1991 S.J.R. 41). Senator Ulichny was the Joint Resolution's principal author and requested District Attorney Lennie Weber to negotiate certain terms of the bill with the State Public Defender's Office and Senator Lynn Adelman.

A proposed constitutional amendment, 2017 A.J.R. 47, currently pending before the Wisconsin State Assembly, would replace the phrase "privileges and protections" with the word "rights."

20

legal rights against those of a crime victim"[31] and that a defendant's rights "would in no way be limited" by the privileges and protections granted crime victims.[32]

¶105 In fact, the importance placed on the Amendment's protection of the rights of the accused is demonstrated in the ballot question asking voters whether they wished to adopt the Amendment. The voters were asked:

> "Rights of victims of crime." Shall section 9m of article I of the constitution be created requiring fair and dignified treatment of crime victims with respect for their privacy and to ensuring that the guaranteed privileges and protections of crime victims

---

[31] Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993, at 4 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis.wisconsin.gov/digital/collection/p16831c oll2/id/592/rec/5). See Letter from Senator Adelman to Dr. Rupert Theobold, head of the Legislative Reference Bureau, Mar. 12, 1992 (available in the drafting file for 1991 S.J.R. 41); Memorandum from Racine County District Attorney Lennie Weber to Senator Barbara Ulichny, Feb. 24, 1992 (available in the drafting file to 1991 S.J.R. 41); Ken Eikenberry, Victims of Crime/Victims of Justice, 34 Wayne L. Rev. 29, 46 (1987-1988) (this law review article is part of the drafting file and was apparently influential in the drafting of the Amendment: "A victims' rights amendment could not, without expressly doing so, curtail any rights granted to defendants.").

[32] See Letter from Senator Adelman to Dr. Rupert Theobold, head of the Legislative Reference Bureau, Mar. 12, 1992 (available in the drafting file for 1991 S.J.R. 41).

Some other states' constitutional provisions guaranteeing certain rights to crime victims also expressly dispel the notion that protection of a victim's rights would diminish the constitutional rights of the accused. See, e.g., Ind. Const. Art. 1, § 13(b) (grants rights to victims "to the extent that exercising these rights does not infringe upon the constitutional rights of the accused").

21

are protected by appropriate remedies in law <u>without limiting any legal rights of the accused</u>?"[33] (Emphasis added.)

¶106 Third, the Crime Victims Amendment tasks the legislature with effectuating the Amendment.[34] The second sentence of the Amendment provides that the State "<u>shall</u> ensure that crime victims have all of the following privileges and protections <u>as provided by law</u> . . . . " (Emphasis added.) The phrase "as provided by law" was used "in order to ensure[ ] that the legislature has great flexibility in devising a reasonable and workable means to implement the specific provisions of the amendment."[35] Furthermore, the second-to-last sentence of the Amendment states that the legislature "shall provide remedies for violation of this section."[36]

---

[33] Gary Watchke, Wis. Legis. Reference Bureau Brief 93-4, <u>Constitutional Amendments and Advisory Referenda to be Considered by Wisconsin Voters April 6, 1993</u>, at 2 (Mar. 1993) (available on the Legislative Reference Bureau's website, http://lrbdigital.legis.wisconsin.gov/digital/collection/p16831coll2/id/592/rec/5).

[34] <u>See</u> Brief of Respondent-Appellant Crime Victims Rights Board at 18 ("[T]he people of Wisconsin have amended the Wisconsin Constitution in a way that restricted how judges may treat crime victims in court proceedings and that expressly empowered the Legislature to provide remedies for violations of victims' rights.").

[35] Memorandum from Racine County District Attorney Lennie Weber to Senator Barbara Ulichny, Feb. 24, 1992 (available in the drafting file for 1991 S.J.R. 41).

[36] <u>See</u> Legislative Reference Bureau Analysis to 1993 S.J.R. 3 ("The legislature <u>must</u> provide remedies for the violation of the new section.").

¶107 Previous judicial interpretations of a constitutional provision are also informative in interpreting and applying the Amendment. This court has had only one occasion to interpret the Crime Victims Amendment.

¶108 The court interpreted the first sentence of the Crime Victims Amendment (stating that "this state shall treat crime victims . . . with fairness, dignity and respect for their privacy") in Schilling v. Crime Victims Rights Board, 2005 WI 17, 278 Wis. 2d 216, 692 N.W.2d 623. The Schilling court declared that this first sentence is a statement of purpose that does not provide enforceable, self-executing crime victims' rights. It merely guides interpretation of the remaining sentences of the constitutional provision and the statutory provisions enacted relating to crime victims' rights.[37] Accordingly, the court determined that a district attorney could not be privately reprimanded by the Crime Victims Rights Board under that provision.[38]

---

[37] Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶¶1, 27, 278 Wis. 2d 216, 692 N.W.2d 623.

[38] The legislature responded to the Schilling decision by enacting 2011 Wis. Act 283, § 2, creating Wis. Stat. § 950.04(1v)(ag) and statutorily recognizing a victim's right to be treated with fairness, dignity, and respect for privacy by public officials. See drafting file for 2001 A.B. 232, 2011 Wis. Act 283. Section 2 of the Act provides as follows:

Section 2. 950.04(1v)(ag) of the statutes is created to read:

950.04(1v)(ag) To be treated with fairness, dignity, and respect for his or her privacy by public officials, employees, or agencies. This paragraph does not impair the right or duty of a public official

(continued)

23

¶109 The constitution's Crime Victims Amendment has not otherwise been judicially interpreted.[39]

¶110 In sum, the text and history of the Crime Victims Amendment reflects the legislature's and the voters' concern for both crime victims and accuseds.

III

¶111 The first legislative enactment interpreting Article I, Section 9m of the Wisconsin Constitution after ratification was 1997 Wis. Act 181. Among other matters, it repealed and recreated Wis. Stat. § 950.04, the crime victims bill of rights, and created the Crime Victims Rights Board. The challenge in the instant case is to provisions of the 1997 Act as amended through the 2015-16 biennium. I proceed to examine the statutory provisions.

¶112 The majority opinion's dissertation and reliance on the separation of powers doctrine to strike down challenged statutory provisions in Chapter 950 as applicable to judges is untethered to the text of the Crime Victims Amendment and the challenged statutes. Indeed, textual analysis is conspicuously absent from the majority opinion.

¶113 The majority opinion defends its rush to constitutional decision without textual analysis by asserting

_____

or employee to conduct his or her official duties reasonably and in good faith.

[39] For a discussion of the Crime Victims Amendment and the open records law, see Democratic Party of Wis. v. DOJ, 2016 WI 100, ¶¶4, 14, 29, 372 Wis. 2d 460, 888 N.W.2d 584.

24

that resolution of the constitutional separation of powers issue is "essential." Majority op., ¶¶52-53 (citing <u>Kollasch v. Adamany</u>, 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51 (1981)).

¶114 Putting the cart before the horse, so to speak, the majority opinion makes the separation of powers issue seem "essential" by framing the issue presented as follows:

> May an executive agency, acting pursuant to authority delegated by the legislature, review a Wisconsin court's exercise of discretion, declare its application of the law to be in error, and then sanction the judge for making a decision the agency disfavors?

Majority op., ¶36.

¶115 The majority opinion frames the issue to engender the response that a statute enabling an executive branch agency to so act is unconstitutional. The majority opinion asserts, without analysis of the text of the statutes, that the Board has authority "to investigate and adjudicate complaints against judges, issue reprimands against judges, and seek equitable relief and forfeitures through civil actions against judges." Majority op., ¶2. The majority opinion should, in my opinion, frame the issues in a more neutral fashion. The issues to be considered are what authority did the legislature grant an executive agency relative to crime victim complaints against judges and is this grant of authority constitutional?[40]

---

[40] The Crime Victims Rights Board offers four main arguments supporting the constitutionality of the challenged statutes:

(continued)

¶116 A careful analysis of the Crime Victims Amendment (Article I, Section 9m of the Wisconsin Constitution), and Chapter 950 (the statutes relating to victims and witnesses of crime), demonstrates that the legislature did not confer "unconstitutional" powers on an executive agency relating to a crime victim's complaint against a judge. A court must presume

---

(1) The Board does not review the correctness of a judge's exercise of discretion in scheduling when a complaint is filed. Rather the Board determines whether the judge's exercise of scheduling discretion was consistent with the constitutional rights of a crime victim and the limitations on judicial discretion created by the Crime Victims Amendment and Chapter 950.

(2) Because the Board's report and recommendations are reviewable by a court under Wis. Stat. Chapter 227, the legislative and executive branches do not exercise unfettered power over a member of the judiciary.

(3) A court's restricting the Board's power to provide a remedy for a judge's violation of a crime victim's rights beyond referral to the Judicial Commission is contrary to the Crime Victims Amendment. Such a restriction deprives crime victims of any remedy in a case in which violation of a crime victim's right does not rise to the level of a violation in the jurisdiction of the Judicial Commission. Supreme Court Rule 60.04(1)(h) requires a judge to "dispose of all judicial matters promptly and efficiently." The Board acknowledges that delay that violates the right of a crime victim under the Constitution and Wis. Stat. § 950.04(1v) may not violate the Code of Judicial Conduct, which requires willful violation. The Board asserts that § 950.04(1v) provides broader protections for victims than the Code of Judicial Conduct.

(4) The Board's issuance of a Report and Recommendation pursuant to Wis. Stat. § 950.09(3) setting forth best practices for protecting a victim's right to speedy disposition in the instant case is a remedy the legislature is authorized to adopt under the Crime Victims Amendment. This remedy does not deprive the judge of any right or alter his or her legal status or interfere with his or her functioning as a judge.

26

that the legislature intended a statute to comply with the legislature's constitutional powers and duties. A court must follow the cardinal principle of saving rather than destroying a statute's constitutionality.

A

¶117 I begin with the legislature's first enactment after voters adopted the Crime Victims Amendment, namely 1997 Wis. Act 181, as amended through the 2015-16 biennium. The Act was apparently enacted in response to the directive in the Crime Victims Amendment that "[t]he legislature shall provide remedies for the violation of this section."[41] The Act created a Crime Victims Rights Board and delegated functions relating to crime victims to the Department of Justice.

¶118 Act 181 created a five-member Crime Victims Rights Board. Wis. Stat. § 15.255(2).[42] The Board is an executive

---

[41] See Brief of Respondent-Appellant Crime Victims Rights Board at 20-22.

[42] Wisconsin Stat. § 15.255(2)(a)-(c) creating the Crime Victims Rights Board provides, inter alia, as follows:

(2) **Crime victims rights board.** (a) There is created a crime victims rights board which is attached to the department of justice under s. 15.03.

(b) The crime victims rights board shall be composed of 5 members as follows:

1. One district attorney holding office in this state.

2. One representative of local law enforcement in this state.

(continued)

27

agency that is "attached" to the Wisconsin Department of Justice for limited administrative purposes.[43] The Act provides that the Board "shall promulgate rules establishing procedures for the exercise of its powers under this section." Wis. Stat. § 950.09(5).[44]

---

3. One person who is employed or contracted by a county board of supervisors under s. 950.06 to provide services for victims and witnesses of crimes.

4. Two members, not employed in law enforcement, by a district attorney or as specified in subd. 3., who are citizens of this state.

(c) The members of the crime victims rights board specified in par. (b)2. and 3. shall be appointed by the attorney general. One of the members specified in par. (b)4. shall be appointed by the crime victims council and the other member shall be appointed by the governor. The member specified in par. (b)1. shall be appointed by the Wisconsin District Attorneys Association.

[43] Wisconsin Stat. § 15.03 describes the Board's limited attachment to the Department of Justice as follows:

Any . . . board attached . . . to a department . . . shall be a distinct unit of that department . . . [and] shall exercise its powers, duties and functions prescribed by law . . . . independently of the head of the department . . . , but budgeting, program coordination and related management functions shall be performed under the direction and supervision of the head of the department . . . .

"Actions of the board are not subject to approval or review by the attorney general." Wis. Stat. § 950.09(4).

[44] For the rules promulgated by the Board, see Wis. Admin. Code § CVRB Ch. 1 (June 2000).

28

¶119 Despite the creation of the Board as a distinct agency, the Department of Justice retains statutory authority and duties regarding crime victims under the Act. The Department's authority and duties are intertwined with the functioning of the Board. The Board may act on a victim's complaint after the Department has completed its actions with regard to a victim's complaint.[45]

¶120 Most importantly for purposes of the instant case is the Department of Justice's mediation function regarding crime victim complaints. The Department's mediation function is set forth in Wis. Stat. § 950.08(3) as follows:

> The department may receive complaints, seek to mediate complaints and, with the consent of the involved parties, actually mediate complaints regarding the treatment of crime victims and witnesses by public officials[46]. . . . The department may act as a liaison between crime victims or witnesses and others when seeking to mediate these complaints and may request a written response regarding the complaint from the subject of a complaint. If asked by the department to provide a written response regarding a complaint, the subject of a complaint shall respond to the department's request within a reasonable time. (Emphasis added.)

---

[45] See Wis. Stat. 950.09(2) ("A party may not request the board to review a complaint under this subsection until the department has completed its action on the complaint under s. 950.08(3)."); Wis. Adm. Code § CVRB 1.04(2) ("All complaints [to the Board] shall be prepared on a complaint form obtained from the mediator."

[46] The statute uses the phrase "public officials, employees, or agencies." Because I conclude that judges are not "employees" or "agencies," I consider only whether judges are "public officials" under the statute.

¶121 The phrase "public officials" is not defined in Wis. Stat. § 950.08(3) or elsewhere in Chapter 950, although it is used several times in the chapter.[47]

¶122 In giving meaning to the phrase "public officials" in Wis. Stat. § 950.08(3), I must consider the context in which the phrase is used. A phrase that ordinarily has a particular meaning may not have that meaning in certain circumstances as it interacts "with and relate[s] to other provisions in the statute and to other statutes."[48] Ordinarily the phrase would include judges. A question arises, however, whether the phrase in § 950.08(3) includes judges.

¶123 Participation in mediation is not required under Wis. Stat. § 950.08(3). I conclude, however, that the phrase "public officials" in § 950.08(3) relating to the Department's mediation function does not include judges for four interrelated reasons: the Crime Victims Amendment, the nature of the mediation

---

[47] I could find no definition of "public officials" that applies in all statutes. For definitions of "state public office" and "state public official" for purposes of the Code of Ethics for Public Officials and Employees, see Wis. Stat. § 19.42(13) and (14).

[48] Dep't of Corrections v. Schwarz, 2005 WI 34, ¶14, 279 Wis. 2d 223, 693 N.W.2d 703 (internal quotation marks and citations omitted); see also Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶74, 293 Wis. 2d 123, 717 N.W.2d 258 (Prosser, J., concurring) ("Ambiguity in an insurance policy may arise in different ways. First, the language of the disputed provision may be ambiguous because the import of the words is uncertain or the impact of the words is uncertain with respect to unusual facts. Second, a provision that is unambiguous when viewed in isolation may become ambiguous when considered in the context of the entire policy.") (Emphasis added.)

process, the prohibition on questioning a judge outside a judicial proceeding about the judge's thought processes regarding an act taken in the judge's official capacity, and the many conflicting roles that the Department plays in the administration of the criminal justice system.

¶124 The Crime Victims Amendment unequivocally provides that neither it nor the legislature limits the rights of the accused. An accused has the right to a judge's exercise of discretion regarding sentencing. "[S]entencing is a discretionary judicial act . . . ." McCleary v. State, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971). See also State v. Gallion, 2004 WI 42, ¶68, 270 Wis. 2d 535, 678 N.W.2d 197 ("The circuit court possesses wide discretion in determining what factors are relevant to its sentencing decision.").

¶125 In the instant case, the victim complained to the Department of Justice while the sentencing proceeding was pending before Judge Gabler. The Department never mediated the matter. Had it attempted to do so (either before or after the completion of sentencing), the mediation would have interfered with the defendant's rights.

¶126 The nature of the mediation process also points to the conclusion that the Department does not have statutory authority to mediate a crime victim's complaint against a judge under Wis. Stat. § 950.08(3). Mediation is a form of dispute resolution in which people in conflict are assisted by a neutral third person

31

to reach a voluntary agreement.[49]  Mediation between the victim and the judge would have taken place outside the presence of the parties in the criminal case——namely, the defendant and the State as prosecutor——and thus would have constituted ex parte communications.[50]

¶127 Another problem with classifying judges as "public officials" subject to mediation by the Department of Justice is that mediation appears to bear the imprimatur of revealing a judge's thought processes outside a judicial proceeding regarding an act taken in the judge's official capacity.  Such a process is problematic.  "The overwhelming authority concludes that a judge may not be compelled to testify concerning mental

---

[49] American Bar Association, How Courts Work:  What is Mediation?, http://www.americanbar.org/groups/public_education/resources/law_related_education_network/how_courts_work/mediation_whatis.html

[50] See Brief of Respondent-Appellant Crime Victims Rights Board at 38 (Noting that the circuit court identified as an issue requiring an evidentiary hearing the "impact on Judge Gabler's communications with [the Department] and the [Crime Victims Rights board] of the Code of Judicial Conduct's restrictions on ex parte communications.").

processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties."[51]

¶128 Furthermore, when the Department acts as mediator, it is wearing only one of many hats it wears in the criminal justice system. For example, the Department consults with and advises district attorneys in all matters pertaining to their duties;[52] appears for the State and prosecutes or defends all actions and proceedings, civil or criminal, in this court and in

---

[51] United States v. Roebuck, 271 F. Supp. 2d 712, 718 (D. V.I. 2003) (citing United States v. Morgan, 313 U.S. 409, 422 (1941); Fayerweather v. Ritch, 195 U.S. 276, 306-07 (1904)); see also State ex rel. Kaufman v. Zakaib, 535 S.E.2d 727, 734-737 (W. Va. 2000); In re Enforcement of Subpoena, 972 N.E.2d 1022, 1027-34 (Mass. 2012) (recognizing a judicial deliberative privilege to refuse to be a witness based on concerns for finality, quality and integrity of decision-making, and the independence and impartiality of the judiciary); United States v. Cross, 516 F. Supp. 700, 707 (M.D. Ga. 1981), aff'd, 742 F.2d 1279 (11th Cir. 1984), vacated on other grounds for further consideration, 468 U.S. 1212 (1984) (because "judges are under no obligation to divulge the reasons that motivated them in their official acts[,] the mental processes employed in formulating the decision may not be probed").

Allowing such probing could undermine the integrity of the judicial system. Roebuck, 271 F. Supp. 2d at 722 (citing Terrazas v. Slagle, 142 F.R.D. 136, 139 (W.D. Tex. 1992); accord United States v. Dowdy, 440 F. Supp. 894, 896 (W. Va. 1977) ("Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning.") (internal quotation marks & quoted source omitted).

[52] Wisconsin Stat. § 165.25(3) provides that the Department of Justice shall "[c]onsult and advise with the district attorneys when requested by them in all matters pertaining to the duties of their office."

the court of appeals;[53] and appears for judges in any civil action or other matter brought before a court or administrative agency growing out of the judge's duties.[54] The Department's multiple roles raise a Gordian knot of conflict-of-interest questions.

¶129 Interpreting "public officials" in Wis. Stat. § 950.08(3) to include a judge for purposes of mediation by the Department of Justice would entangle judges in this web of conflicts.

¶130 These considerations cast significant doubt on interpreting the phrase "public officials" in Wis. Stat. § 950.08(3) to include a judge and to enable the Department of Justice to mediate a crime victim's complaint against a judge.

¶131 In sum, mediation would have interfered with an accused's rights guaranteed by the federal and state constitutions to a fair, impartial, neutral, nonpartisan judge exercising his or her discretion in sentencing; interfered with ongoing proceedings in the circuit court; involved ex parte communications; involved the judge in explaining his or her thought processes; and entangled the judge in a web of the Department's conflicts.

---

[53] See Wis. Stat. § 165.25(1).

[54] See Wis. Stat. § 165.25(6). In the instant case, however, the Department represents the Crime Victims Rights Board before this court against a judge in a lawsuit involving a crime victim's complaint against the judge; the Department does not represent the judge.

¶132 When there are multiple "competing plausible interpretations" of a statute, the canon of constitutional avoidance instructs a court to choose the constitutional interpretation based on the "reasonable presumption that [the legislature] did not intend the alternative which raises serious constitutional doubts." Clark v. Martinez, 543 U.S. 371, 381 (2005).[55]

¶133 Accordingly, applying the rules of statutory interpretation, I conclude that the phrase "public officials" in Wis. Stat. § 950.08(3) for purposes of mediation by the Department of Justice does not include judges. Judges are not subject to the Department's mediation of a crime victim's complaint under § 950.08(3).

B

¶134 Having decided that Wis. Stat. § 950.08(3) does not grant the Department of Justice authority to mediate a crime victim's complaint against a judge, I turn to the power of the Crime Victims Rights Board over a crime victim's complaint

---

[55] See also Clark v. Martinez, 543 U.S. 371, 385 (2005) ("The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them. See, e.g., Almendarez-Torres v. United States, 523 U.S. 224, 237-238 (1998); United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909)."). See also Chicago & N.W. Ry. Co. v. Pub. Serv. Comm'n, 43 Wis. 2d 570, 577-78, 169 N.W.2d 65, 68 (1969) ("[I]f a statute is open to more than one reasonable construction, the construction which will accomplish the legislative purpose and avoid unconstitutionality must be adopted.").

35

against a judge. The Board takes the position in the instant case that it has authority over a crime victim's complaint against a judge even though no mediation takes place. According to the Board, the Department of Justice need not mediate a matter for the Board to attain power over a crime victim's complaint against a judge; for the Board to act on a complaint, the Department need confirm only that it has completed its action under Wis. Stat. § 950.08(3).[56]

¶135 Although the statutes and Board rules might be interpreted to require mediation by the Department of Justice as a prerequisite to the Board's functioning,[57] I agree that mediation is discretionary with a party and is not a necessary prerequisite for the Board to function.

¶136 The Crime Victims Rights Board's functions are described in Wis. Stat. § 950.09(2)(a)-(d).

## **Wis. Stat. § 950.09(2)**

¶137 The introductory language in § 950.09(2) (quoted below) requires the Board to determine, before it begins any investigation or takes any action, that there is probable cause to believe that the subject of the complaint violated the rights of a crime victim.

> **Wis. Stat. § 950.09(2)** At the request of one of the involved parties, the board may review a complaint

---

[56] See Brief of Respondent-Appellant Crime Victims Rights Board at 41-42.

[57] Judge Gabler takes this position as a matter of statutory interpretation. See Brief of Petitioner-Respondent The Honorable William M. Gabler, Sr. at 22-24.

36

made to the department under s. 950.08(3) regarding a violation of the rights of a crime victim. A party may not request the board to review a complaint under this subsection until the department has completed its action on the complaint under s. 950.08(3). In reviewing a complaint under this subsection, the board may not begin any investigation or take any action specified in pars. (a) to (d) until the board first determines that there is probable cause to believe that the subject of the complaint violated the rights of a crime victim. . . .

¶138 To determine whether there is probable cause, the Board requests the subject of the complaint to submit an answer. Wis. Admin. Code § CVRB 1.05(4), (5) (June 2000). The Board determines probable cause based on the complaint, answer, and any information provided by the mediator. Wis. Admin. Code § CVRB 1.05(6), (7) (June 2000). If the Board finds probable cause, it may commence an investigation. Wis. Admin. Code § CVRB 1.05(8) (June 2000).[58]

¶139 The Board's rules provide that it may, as an investigatory body, "request responses [from the subject of a complaint] to written questions, participation in a personal or telephone interview with the Board, and written documentation." Wis. Admin. Code § CVRB 1.06 (June 2000). A hearing may be held. Wis. Admin. Code § CVRB 1.07 (June 2000).

---

[58] Judge Gabler interprets Wis. Stat. § 950.09(2) and Wis. Admin. Code § CVRB 1.06(1) as prohibiting the Board from investigating a crime victim complaint until after there has been a finding of probable cause and argues that the Board violated the confidentiality of Judge Gabler's file contrary to § 950.095(1)(a). See Brief of Petitioner-Respondent The Honorable William M. Gabler, Sr. at 30-32.

37

¶140 A party's participation in the Board's finding of probable cause, investigation, and hearing is not required. For substantially similar reasons for my conclusion that the statute, properly interpreted, does not authorize the Department of Justice to mediate a crime victim's complaint against a judge, I conclude that the Board is not authorized to determine probable cause or investigate a crime victim's complaint against a judge.

¶141 The Board's probable cause determination and investigation of a crime victim's complaint would, in violation of the Crime Victims Amendment, limit the judge's decision-making ability and the rights of the accused, would require the judge to engage in ex parte communications, and would require the judge to explain, outside the judicial proceeding, the judge's thought processes regarding an act taken in the judge's official capacity. See ¶126 & n.50, supra.

¶142 Accordingly I conclude that Wis. Stat. § 950.09(2) does not authorize the Crime Victims Rights Board to determine probable cause or investigate a crime victim's complaint against a judge.

### Wis. Stat. § 950.09(2)(a),(c), & (d)

¶143 After a determination of probable cause and investigation under Wis. Stat. § 950.09(2), the Board "may do any of the following":

> (a) Issue private and public reprimands of public officials, employees or agencies that violate the rights of crime victims provided under this chapter, ch. 938 and article I, section 9m, of the Wisconsin

38

constitution. **[DECLARED UNCONSTITUTIONAL by MAJORITY OPINION as to JUDGES.]**

(b) Refer to the judicial commission a violation or alleged violation by a judge of the rights of crime victims provided under this chapter, ch. 938[59] and article I, section 9m, of the Wisconsin constitution. **[NOT CHALLENGED.]**

(c) Seek appropriate equitable relief on behalf of a victim if such relief is necessary to protect the rights of the victim. The board may not seek to appeal, reverse or modify a judgment of conviction or a sentence in a criminal case. **[DECLARED UNCONSTITUTIONAL by MAJORITY OPINION as to JUDGES.]**

(d) Bring civil actions to assess a forfeiture under s. 950.11. Notwithstanding s. 778.06, an action or proposed action authorized under this paragraph may be settled for such sum as may be agreed upon between the parties. In settling actions or proposed actions, the board shall treat comparable situations in a comparable manner and shall assure that any settlement bears a reasonable relationship to the severity of the offense or alleged offense. Forfeiture actions brought by the board shall be brought in the circuit court for the county in which the violation is alleged to have occurred. (Emphasis added.) **[DECLARED UNCONSTITUTIONAL by MAJORITY OPINION as to JUDGES.]**

¶144 Although the Board cannot determine probable cause or investigate a crime victim's complaint against a judge, I address Wis. Stat. § 950.09(2)(a), (c), and (d) to determine their applicability to judges.

¶145 I approach each challenged paragraph (that is, (a), (c), and (d)) of Wis. Stat. § 950.09(2) in turn with the rules of statutory interpretation in mind. I conclude that these

---

[59] Chapter 938 of the Wisconsin Statutes is entitled the Juvenile Justice Code. Section 938.01(2)(g) explains that the victim of a criminal act perpetrated by a juvenile is afforded the same rights as if the actor were an adult.

three paragraphs do not empower the Board to act on a crime victim's complaint against a judge.

¶146 **Wis. Stat. § 950.09(2)(a).** Paragraph (a) of Wis. Stat. § 950.09(2) refers to "public officials." As in Wis. Stat. § 950.08(3), the phrase "public officials" is undefined. The majority opinion assumes, without analysis, that the phrase includes judges. I do not. This assumption is unreasonable for several reasons.

¶147 First, as I explained above, the phrase "public officials" used in Wis. Stat. § 950.08(3) cannot be interpreted as referring to judges. See ¶¶121-131, supra. If the phrase in § 950.08(3) does not include judges, the phrase in § 950.09(2) probably does not refer to judges. Why? Because § 950.08(3) and § 950.09(2) are tied together, and it is only logical that the phrase would have the same meaning in both places.[60]

¶148 Second, Wis. Stat. § 950.09(2)(a)'s use of the word "reprimand" along with the phrase "public officials" leads a reader to conclude that the phrase "public officials" does not include a judge. The word "reprimand" is a word used in the Wisconsin Constitution and statutes referring to discipline of judges. Discipline of judges is governed by Article VII,

---

[60] See State ex rel. Gebarski v. Circuit Court, 80 Wis. 2d 489, 495, 259 N.W.2d 531 (1977) (citing Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932) (a natural presumption exists that an identical term used multiple times in different parts of a legislative act is intended to have the same meaning, but the presumption is not rigid).

40

Section 11 of the Wisconsin Constitution,[61] Wis. Stat. §§ 757.71-.99, and Supreme Court Rules Chapter 60.[62]  To interpret the phrase "public official" in § 950.09(2)(a) to mean that the Board may reprimand a judge renders this provision constitutionally problematic because other constitutional and statutory provisions explicitly govern judicial discipline, including reprimand.

¶149 Interpreting the phrase "public official" in Wis. Stat. § 950.09(2)(a) as not including a judge or justice renders the phrase "public official" used in § 950.09(2)(a) consistent with the use of the phrase in § 950.08(3) and avoids a constitutional challenge to § 950.09(2)(a).

¶150 Third, the statutes state that the Board has authority to refer a violation or alleged violation by a judge of the rights of a crime victim to the Judicial Commission.  This statement appears not once but twice in Chapter 950.  See Wis. Stat. §§ 950.09(2)(b), 950.095(2)(b).

---

[61] Article VII, Section 11 of the Wisconsin Constitution provides:

> Each justice or judge shall be subject to reprimand, censure, suspension, removal for cause or for disability, by the supreme court pursuant to procedures established by the legislature by law.  No justice or judge removed for cause shall be eligible for reappointment or temporary service.  This section is alternative to, and cumulative with, the methods of removal provided in sections 1 and 13 of this article and section 12 of article XIII.  (Emphasis added.)

[62] Supreme Court Rules are printed in volume 6 of the Wisconsin Statutes.

41

¶151 These provisions specifically referring to a judge and the Judicial Commission imply that the legislature excluded judges from the phrase "public officials"; the legislature chose to single out judges and not treat judges as "public officials."

¶152 There is no constitutional or statutory problem with the Board's forwarding complaints against a judge to the Judicial Commission.

¶153 Fourth, Wis. Stat. § 950.105 gives a crime victim the right to assert, in the circuit court in which the alleged violation has occurred, his or her rights as a crime victim under the statutes or under Article I, Section 9m of the Wisconsin Constitution. The inference to be drawn is that the crime victim has a remedy for a complaint against a judge and need not rely on the Board to resolve the complaint.

¶154 Fifth, during enactment of Wis. Stat. § 950.09 the legislature rejected an amendment to the bill that would have prevented the Board from reviewing a complaint made against a judge.[63] The Crime Victims Rights Board argues in this court that the rejected amendment means the legislature intended the Board to oversee a crime victim's complaint against a judge under § 950.09.[64] Another more plausible interpretation is that the amendment was not necessary in light of the other provisions

---

[63] Compare S. Amend. 1 to 1997 A.B. 342 with 1997 Wis. Act 181.

[64] See Brief of Respondent-Appellant Crime Victims Rights Board at 22.

42

in subsection 950.09(2) expressing the legislative intent that certain provisions in § 950.09(2) do not govern judges.

¶155 Sixth, Wis. Stat. § 950.04(1v)(ag), a provision in the crime victims bill of rights, includes the phrase "public officials":  A crime victim has the right "to be treated with fairness, dignity and respect for his or her privacy by public officials, employees or agencies."[65]  The phrase "public officials" is not defined here either.

¶156 Even if the phrase includes judges, the next sentence provides:  "This paragraph does not impair the right or duty of a public official or employee to conduct his or official duties reasonably and in good faith."  These two sentences read together demonstrate that the legislature was careful not to allow this provision referring to public officials to include judges and interfere with a judge's core function of deciding cases.

---

[65] The phrase "public official" also appears in Wis. Stat. § 950.04(1v)(dr), the crime victims bill of rights, relating to a public official's duty to protect a victim's personal identity.  A victim's personal identity is protected in judicial records.

This court has adopted rules under Wis. Stat. § 751.12 governing the protection of the personal identity of crime victims.  In appellate procedure, the protection of personal identity is governed by Wis. Stat. § (Rule) 809.86.  In the circuit courts, attorneys may file a motion to seal information, including crime victim information.  See Wis. Stat. § 801.21; Gerald P. Ptacek & Marcia Vandercook, Court Filings: New Rules to Protect Confidential Information in Court Records, Wis. Lawyer, May 2016, at 12.

¶157 Seventh and last (and perhaps most importantly), Wis. Stat. § 950.09(2)(c) explicitly and significantly limits the Board's powers over a judge or a judge's decision in a criminal case, stating: "The board may not seek to appeal, reverse or modify a judgment of conviction or a sentence in a criminal case."[66]

¶158 A similar limitation on a crime victim's sway over a circuit court's decision-making powers appears in Wis. Stat. § 950.10(2). This subsection provides that a court's failure to comply with Chapter 950 or Article I, Section 9m of the Wisconsin Constitution, the Crime Victims Amendment, is not grounds for an appeal of a judgment of conviction and is not grounds to reverse or modify a judgment of conviction or a sentence.[67]

¶159 Applying the rules of statutory interpretation to Wis. Stat. § 950.09(2)(a), I conclude that Wis. Stat. § 950.09(2)(a)

---

[66] See Brief of Respondent-Appellant Crime Victims Rights Board at 22.

[67] Wisconsin Stat. § 950.10(2) provides as follows:

A failure to provide a right, service or notice to a victim under this chapter or ch. 938 or under Article I, section 9m, of the Wisconsin constitution is not ground for an appeal of a judgment of a conviction and is not grounds for any court to reverse or modify a judgment of conviction or sentence.

See State v. Grindemann, 2002 WI App 106, ¶19 n.5, 255 Wis. 2d 632, 648 N.W.2d 507 (State conceded that failure to conform to statutory provisions governing crime victim rights is not grounds for an appeal of a sentence, citing Wis. Stat. § 950.10(2)).

44

does not apply to judges. If the Board has no statutory power to reprimand judges, no constitutional issue arises by virtue of § 950.09(2)(a).

¶160 **Wis. Stat. § 950.09(2)(c).** Wisconsin Stat. § 950.09(2)(c) empowers the Crime Victims Rights Board to seek appropriate equitable relief as follows:

> Wis. Stat. § 950.09(2)(c) Seek appropriate equitable relief on behalf of a victim if such relief is necessary to protect the rights of the victim. The board may not seek to appeal, reverse or modify a judgment of conviction or a sentence in a criminal case.

¶161 This provision does not explicitly allow the Board to seek equitable judicial relief against a court or judge. Interpreting the provision to allow such equitable relief would negate the second sentence, which significantly limits the Board's power over courts and judges.

¶162 Furthermore, the Crime Victims Amendment explicitly states that neither the Amendment nor any statute enacted pursuant thereto shall limit any right of the accused which may be provided by law. An accused has the right to a fair, neutral, impartial, and nonpartisan judicial proceeding conducted according to law, including a judge's exercise of discretion.

¶163 If the Board were able to seek equitable relief to enjoin a court or judge from scheduling sentencing, for example,

45

that action would limit the accused's rights in contravention of the Crime Victims Amendment.[68]

¶164 In sum, as a matter of statutory interpretation I conclude that Wis. Stat. § 950.09(2)(c) does not confer power on the Board to seek equitable relief against a judge or court.

¶165 **Wis. Stat. § 950.09(2)(d).** Wisconsin Stat. § 950.09(2)(d) provides that the Crime Victims Rights Board may

> [b]ring civil actions to assess a forfeiture under s. 950.11. . . . Forfeiture actions brought by the board shall be brought in the circuit court for the county in which the violation is alleged to have occurred.

¶166 Section 950.09(2)(d) does not explicitly grant the Board the authority to bring a forfeiture action against a judge.

¶167 Another provision, Wis. Stat. § 950.11, to which § 950.09(2)(d) refers, explains that a civil action to assess a forfeiture under § 950.09(2)(d) may be brought against "public official." Wisconsin Stat. § 950.11 provides:

> Penalties. A public official, employee or agency that intentionally fails to provide a right specified under s. 950.04(1v) to a victim of a crime may be subject to a forfeiture of not more than $1,000.

Again the phrase "public official" is not defined.

¶168 The majority opinion declares that Wis. Stat. § 950.09(2)(d) is unconstitutional as applied to judges on the ground that it allows the Board to "financially penalize" a judge. Majority op., ¶42. The majority opinion errs.

---

[68] See Reply Brief of Respondent-Appellant Crime Victims Rights Board at 9.

46

¶169 As a matter of statutory interpretation, the phrase "public official" used in Wis. Stat. § 950.11 and applicable to § 950.09(2)(d) does not include judges. The phrase "public officials" is used in the same way in § 950.11 as it is used in §§ 950.08(3), 950.09(2)(a), 950.04(1v)(ag), and 950.04(1v)(dr), and does not include a judge.

¶170 Even if judges were "public officials" under Wis. Stat. § 950.09(11), a forfeiture action cannot be brought against a judge under § 950.09(2)(d). Judges have absolute judicial immunity as a matter of statutory and common law in Wisconsin.[69] Although this absolute immunity is limited to acts taken within the jurisdiction of the court, a judge's decision on scheduling sentencing, for example, is without a doubt an act taken within the jurisdiction of the court.

¶171 I thus conclude as a matter of statutory interpretation and the doctrine of judicial immunity that Wis. Stat. § 950.09(2)(d) does not authorize the imposition of a forfeiture on judges as a matter of statutory and common law.[70]

---

[69] See, e.g., Ford v. Kenosha Cty, 160 Wis. 2d 485, 498, 466 N.W.2d 646 (1991); Scarpaci v. Milwaukee Cty., 96 Wis. 2d 663, 694-95, 292 N.W.2d 816 (1980); Stump v. Sparkman, 435 U.S. 349 (1978); Pierson v. Ray, 386 U.S. 547 (1967); Wis. Stat. § 893.80(4).

[70] The Capital Times explained that prior to the adoption of the Crime Victims Amendment, then-Assembly Minority Leader David Prosser worried that "[i]f crime victims who are given specific constitutional rights believe the system has failed to protect them adequately, district attorneys, judges and other criminal justice officers could be sued . . . ." Victim Rights on Crowded Ballot, The Capital Times, Mar. 8, 1993.

## **Wis. Stat. § 950.09(3)**

¶172 I turn now to Wis. Stat. § 950.09(3) authorizing the Crime Victims Rights Board to issue Reports and Recommendations "concerning the securing and provision of crime victims rights and services." The text of § 950.09(3) applies to judges and judicial proceedings, inter alia, and provides as follows:

> **Wis. Stat. § 950.09(3)** In addition to its powers under sub. (2), the board may issue reports and recommendations concerning the securing and provision of crime victims rights and services. (Emphasis added.)

¶173 The Crime Victims Amendment entrusts the legislature, as I have stated previously, with the responsibility to "provide remedies for the violation of this section." The Report and Recommendation is one remedy the legislature has provided under the Crime Victims Amendment.[71]

¶174 The majority opinion declares Wis. Stat. § 950.09(3) unconstitutional as applied to judges under the separation of powers doctrine on the ground that "the Board encroached on exclusive judicial authority . . . ." Majority op., ¶41. The majority opinion feigns that the Board's Report and Recommendation invades judicial decision-making in the instant case by recommending the timing for scheduling a sentencing proceeding. Majority op., ¶41. The Report and Recommendation relating to the instant case does no such thing.

---

[71] See Brief of Respondent-Appellant Crime Victims Rights Board at 22.

48

¶175 The majority opinion ignores the statutory language and the Board's interpretation and application thereof.

¶176 The Board's Reports and Recommendations recommend best practices for "securing . . . crime victims rights." The Reports often begin with a statement that "the Board has become aware of a situation that provides the Board with an opportunity to" comment on the situation and recommend best practices for assisting victims. The Report describes the factual background of the situation, as the Board understands it. After stating the facts, often taken from a transcript of the court proceedings, the Report generally sets forth the applicable statutes, the issues, and the recommendations. None of the Reports reveals names, the county in which the situation arose, or other identifying indicators. No report reprimands a judge or interferes with any of the judiciary's core powers.

¶177 The Board has issued at least six Reports and Recommendations relating to a crime victim in a judicial proceeding. Each of the Reports and Recommendations is public and can be found on the Board's website. See https://www.doj.state.wi.us/ocvs/cvrb-documents.[72]

¶178 Neither the statute nor the Report and Recommendation itself provides a means for enforcing the Board's Report and Recommendation. In other words, the Report and Recommendation does not bind anyone. The Report and Recommendation is just what its title denotes——no more, no less.

---

[72] See Brief of Respondent-Appellant Crime Victims Rights Board at 14-15.

¶179 The majority opinion recognizes it should not use its judicial power to stifle criticism of judicial decisions, judicial practices, judges, or the judicial system. But stifle it does. The majority opinion declares that the Board's Report and Recommendation generally describing a situation involving a crime victim and proposing best practices for judges is unconstitutional. Majority op., ¶¶54-57.

¶180 Section § 950.09(3) does not present even a close call for me: The court should not silence legislatively authorized evaluations of the judicial system by an executive agency composed of criminal justice professionals and public members. The institutions composing the criminal justice system, including the courts, should welcome all the help we can get.

¶181 I conclude that the Board's authority to issue a Report and Recommendation set forth in Wis. Stat. § 950.09(3) is a legislative remedy authorized by the Crime Victims Amendment that helps secure crime victims rights and services and does not limit the rights of an accused or violate any constitutional provision. The Board's power to issue Reports and Recommendations pursuant to § 950.09(3) is constitutional as applied to judges.

## **Wis. Stat. § 950.11**

¶182 Finally, I address Wis. Stat. § 950.11 imposing penalties on public officials. Section 950.11 states that a public official who intentionally fails to provide a right specified under the crime victims bill of rights may be subject to forfeiture as follows:

**Wis. Stat. § 950.11. Penalties** A public official, employee or agency that intentionally fails to provide a right specified under s. 950.04 (1v) to a victim of a crime may be subject to a forfeiture of not more than $1,000. **[DECLARED UNCONSTITUTIONAL by MAJORITY OPINION as to JUDGES]**

¶183 Again, this statute does not define the phrase "public official." The majority opinion declares this provision unconstitutional as applied to judges on the ground that the Board "could financially penalize a judge for exercising legal judgment . . . ." Majority op., ¶42.

¶184 I conclude this provision does not apply to judges. The phrase "public official" does not include a judge, as I have explained previously.

¶185 Moreover, a judge has absolute judicial immunity from personal liability under statute and common law if the judge acts within the jurisdiction of the court. See ¶170 & n.69, supra.

IV

¶186 I now turn from the statutory provisions to assess the conduct of the Department of Justice and the Crime Victims Rights Board in the instant case. I must determine whether either or both exceeded their statutory powers or violated the federal or state constitution in the instant case.

¶187 The Department of Justice does not have the statutory power to mediate a complaint by a crime victim against a judge; it did not attempt to perform mediation in the instant case.

¶188 The Crime Victim Rights Board, however, sought to determine probable cause and to investigate the crime victim's complaint against Judge Gabler under Wis. Stat. § 950.09(2).

51

The statute, properly interpreted, does not authorize the Board to undertake these pursuits in relation to a crime victim's complaint against a judge. To the extent that the Board did so, the Board exceeded its statutory powers.

¶189 The Board does not have the authority to reprimand Judge Gabler or to interfere with the Judge's discretion in scheduling sentencing. To the extent that the Board undertook to reprimand the judge or interfere with the judge's discretion, it exceeded its statutory authority.

¶190 The statutes do not authorize the Board to seek equitable relief or to bring a civil action against a judge to assess a forfeiture. The Board did not do so in the instant case.

¶191 The Board issued a Report and Recommendation based on the facts of the instant case. The Report did not identify the Judge, the crime victim, or the county and did not include any identifying factors. The legislature has the responsibility to "provide remedies for the violation" of the Crime Victims Amendment. One of a crime victim's privileges and protections under the Crime Victims Amendment and the crime victims bill of rights is the "timely disposition of the case." One remedy the legislature has provided is the Board's issuance of Reports and Recommendations. Wis. Stat. § 950.09(3).

¶192 I conclude that the Board's power to issue Reports and Recommendations is constitutional when applied to a judge and does not interfere with the judiciary's core powers.

* * * *

52

¶193 As properly interpreted, the challenged sections of Chapter 950 are constitutional with respect to judges.

- Wisconsin Stat. § 950.08(3) does not authorize the Department of Justice to mediate a complaint against a judge.

- Wisconsin Stat. § 950.09(2) does not authorize the Crime Victims Rights Board to determine probable cause or investigate a crime victim's complaint against a judge.

- Wisconsin Stat. § 950.09(2)(a) does not authorize the Crime Victims Rights Board to "reprimand" a judge.

- Wisconsin Stat. § 950.09(2)(b) authorizes the Crime Victims Rights Board to refer a complaint about a judge to the Judicial Commission.

- Wisconsin Stat. § 950.09(2)(c) does not authorize the Crime Victims Rights Board to seek equitable relief against a judge.

- Wisconsin Stat. § 950.09(2)(d) does not authorize the Crime Victims Rights Board to impose a forfeiture on a judge: A judge enjoys absolute immunity for actions taken in his or her official capacity.

- Wisconsin Stat. § 950.09(3) authorizes the Crime Victims Rights Board to issue a non-binding Report and Recommendation concerning the securing of crime victims' rights and services. This court should not silence critiques of the judicial system as authorized by the legislature.

53

- The Department of Justice and the Crime Victims Rights Board, however, did not correctly interpret and apply the challenged statutes.

¶194 The majority opinion contravenes basic principles of statutory and constitutional interpretation. Applying the canon of constitutional avoidance, I conclude that the challenged statutory provisions are easily amenable to a constitutional interpretation. The majority opinion's lengthy foray into the separation of powers analysis is unnecessary and inappropriate.

¶195 When a court addresses the scope of the judicial branch's power and the powers of the other branches of government, it must avoid an overzealous defense of the judiciary's power and must avoid appropriation of unchecked power in the judiciary.

¶196 The Crime Victims Amendment and the statutes demonstrate the legislature's attempt at a thoughtful, even-handed approach to crime victims, accuseds, and judicial and executive branch functions. Is the drafting perfect? No. But perfect drafting is rarely the hallmark of any state or federal statute (or opinion of a court).

¶197 For the reasons set forth, I write separately.